UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
BRANDI JOHNSON,

                       12 CIV. 4460 (HB)

               Plaintiff,

   -against-

STRIVE EAST HARLEM EMPLOYMENT         **DECLARATION OF**
GROUP, LISA STEIN, Individually, ROB
CARMONA, Individually and PHIL WEINBERG,     **SARIR Z. SILVER**
Individually,

               Defendants.
---------------------------------------------------------------X

Sarir Z. Silver, hereby affirms the following under the penalty of perjury:

      1.      I am an attorney with Gordon & Rees LLP, attorneys for defendants Strive

East Harlem Employment Service (improperly named as Strive East Harlem Employment

Group), Lisa Stein, Rob Carmona and Phil Weinberg (together "Defendants").  I submit

this Declaration in support of Defendants' Memorandum of Law in Support of its motion

to dismiss pursuant to Rule 12(b)(6).

      2.      Attached as Exhibit A is a copy of the Complaint.

Dated:       New York, New York
             August 6, 2012

                              Respectfully Submitted,

                              GORDON & REES LLP

                              By: _____/s/_____
                              Sarir Z. Silver
                              90 Broad Street
                              23rd Floor
                              New York, New York 10004
                              (212) 269-5500 (Phone)
                              (212) 269-5505 (Fax)
                              *Attorneys for Defendants*

# EXHIBIT A

12 CIV No. 4460

-----------------------------------------------------------X

**COMPLAINT**

BRANDI JOHNSON,

Plaintiff,

PLAINTIFF DEMANDS
A TRIAL BY JURY

v.



STRIVE EAST HARLEM EMPLOYMENT GROUP,
LISA STEIN, *Individually*, ROB CARMONA, *Individually*
and PHIL WEINBERG, *Individually*

Defendants.

-----------------------------------------------------------X

Plaintiff, BRANDI JOHNSON, by her attorneys, PHILLIPS & PHILLIPS ATTORNEYS

AT LAW, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

Plaintiff complains pursuant to 42 U.S.C. §1981 and the New York City Human Rights

Law, New York City Administrative Code § 8-502(a), *et. seq.,* and seeks damages to redress the

injuries Plaintiff has suffered as a result of being sexually harassed, discriminated against

because of her race and sex, retaliated against, severely humiliated, mentally anguished, and

emotionally and physically distressed by the Defendants. **Defendant CARMONA while**

**supervising Plaintiff has berated, belittled and addressed Plaintiff Johnson, calling her a**

**"NIGGER", has told her that she was too "emotional" when she brought a client's**

**complaint of sexual harassment to his attention while claiming that the client was**

**"WHORE" "UGLY AS SHIT" and no one couldn't tell him that the client "DIDN'T**

**ENJOY" it. Defendant CARMONA has also prevented Plaintiff from complaining about**

**his behavior by intimidating her, slamming a door in her face and isolating her from co-**

**workers and client  by reprimanding those who would speak or otherwise socialize with**

**Plaintiff.**

JURISDICTION AND VENUE

1. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the claims of plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this district based upon Plaintiff's residency within the County of New York, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

PARTIES

4. That at all times relevant hereto, Plaintiff BRANDI JOHNSON ("JOHNSON") is a resident of the State of New York and County of New York.

5. That at all times relevant hereto, Defendant STRIVE EAST HARLEM EMPLOYMENT GROUP ("STRIVE") was and is a workforce development non- profit organization duly existing by virtue of the laws of the State of New York.

6. That at all times relevant hereto, Defendant STRIVE owns and/or operates, among others, an employment services center located at 240 East 123rd Street, 3rd Floor, New York, New York.

7. That at all times relevant hereto, Defendant ROB CARMONA ("CARMONA") was and is a resident of the State of New York.

8. That at all times relevant hereto, Defendant LISA STEIN ("STEIN") was and is a resident of the State of New York.

9. That at all times relevant hereto, Defendant PHIL WEINBERG ("WEINBERG") was and is a resident of the State of New York.

10. That at all times relevant hereto, Defendant CARMONA was and is an employee of

Defendant STRIVE.

11.    That at all times relevant hereto, Defendant STEIN was and is an employee of Defendant STRIVE.

12.    That at all times relevant hereto, Defendant WEINBERG was and is an employee of Defendant STRIVE.

13.    That at all times relevant hereto, Defendant CARMONA was Plaintiff JOHNSON's supervisor and/or held supervisory authority over Plaintiff JOHNSON.

14.    That at all times relevant hereto, Defendant STEIN was Plaintiff JOHNSON's supervisor and/or held supervisory authority over Plaintiff JOHNSON.

15.    That at all times relevant hereto, Defendant WEINBERG was Plaintiff JOHNSON's supervisor and/or held supervisory authority over Plaintiff JOHNSON.

16.    That at all times relevant hereto, Defendant CARMONA was and is the founder of Defendant STRIVE's East Harlem location.

17.    That at all times relevant hereto, Defendant STEIN was and is the Chief Operating Officer and Chief Financial Officer of Defendant STRIVE's East Harlem location.

18.    That at all times relevant hereto, Plaintiff JOHNSON was an employee of Defendant STRIVE.

19.    Plaintiff JOHNSON is an African-American female.

20.    Plaintiff JOHNSON earned approximately $60,000 a year.

21.    Defendant STEIN is a Caucasian female.

22.    Defendant CARMONA is a Hispanic-American male.

23.    Defendant WEINBERG is a Caucasian male.

24.    Defendant STRIVE, Defendant CARMONA, Defendant STEIN and Defendant WEINBERG are collectively referred to herein as "Defendants."

## MATERIAL FACTS

25. On or about May 5, 2010, Plaintiff JOHNSON began working for Defendant STRIVE as a "Pathways Out of Poverty Program Manager/National Affiliate Services Coordinator" at Defendant STRIVE's East Harlem office located at 240 East 123rd Street, 3rd Floor, New York, New York.

26. At all times relevant hereto, Plaintiff JOHNSON was an exemplary employee.

27. Throughout her tenure with Defendant STRIVE, Plaintiff JOHNSON always received compliments for her work performance and got along well with all of her co-workers.

28. However, this all changed in 2010 when Defendant CARMONA began to belittle and disrespect Plaintiff JOHNSON on a continuous and repetitive basis.

29. By way of example, on or around September 13, 2011, Dewayne Hubbard, a colleague of Plaintiff JOHNSON, was having some challenges both professionally and personally. Specifically, Defendant STRIVE had given Mr. Hubbard 30 days to sign up with a drug treatment facility. On this particular day, Mr. Hubbard came by Plaintiff JOHNSON's desk where Plaintiff JOHNSON professionally consoled and encouraged Mr. Hubbard during his personal and professional challenges. Throughout this brief exchange, Defendant CARMONA was visibly upset that Plaintiff JOHNSON was consoling Mr. Hubbard.

30. At one point, Defendant CARMONA walked by Plaintiff JOHNSON and Mr. Hubbard and stated: "Yo, let me talk to you." Mr. Hubbard and Plaintiff JOHNSON were both perplexed as they did not know whom Defendant CARMONA was addressing. Plaintiff JOHNSON thought that Defendant CARMONA wanted to speak with her and muttered this to Mr. Hubbard. However, Defendant CARMONA then made it clear that he wanted to speak with Mr. Hubbard in his office. Therein, Plaintiff JOHNSON witnessed Defendant

CARMONA badger and ridicule Mr. Hubbard for his actions.

31. On this very day, Defendant STRIVE was being audited and Ms. Rochelle Layne from the United States Department of Labor was on site conducting an audit of Defendant STRIVE's ARRA (American Recovery and Reinvest Act of 2009) Pathways Out of Poverty Program.

32. Since Ms. Layne was conducting said audit at the time, Plaintiff JOHNSON did not feel that it was appropriate for Ms. Layne to overhear Defendant CARMONA belittle and disparage Mr. Hubbard as he did. Accordingly, Plaintiff JOHNSON rose from her desk and closed Defendant CARMONA's office door.

33. **Once Mr. Hubbard departed Defendant CARMONA's office, Defendant CARMONA summoned Plaintiff JOHNSON to come into his office. Therein, Defendant CARMONA proceeded to yell at Plaintiff JOHNSON; curse at her; and inappropriately pointed his finger in her face on numerous occasions. Specifically, Defendant CARMONA yelled: "Did I FUCKING ask you to close my door?!?! If I wanted my FUCKING door closed, I would have closed my door my FUCKING self!!"**

34. In response, Plaintiff JOHNSON stated that Defendant CARMONA did not request his door closed. And before Plaintiff JOHNSON could say anything further, Defendant CARMONA continued to unprofessionally and rudely point his finger in Plaintiff JOHNSON's face and stated that Mr. Hubbard needed to be embarrassed. In response, Plaintiff JOHNSON stated that she did not close Defendant CARMONA's door for that reason, but that she closed his office door because Defendant STRIVE was in the middle of an audit and that she did not feel that Defendant CARMONA's exchange with Mr. Hubbard would be appropriate for the auditor to witness and/or overhear.

35. In response to this, Defendant CARMONA continued with his tirade and walked off.

36. Following the conclusion of Ms. Layne's audit, Plaintiff JOHNSON spoke to Defendant STEIN, the CFO and COO of Defendant STRIVE who also served as Plaintiff JOHNSON's immediate supervisor who witnessed the aforementioned exchange between Defendant CARMONA, Mr. Hubbard and Plaintiff JOHNSON .

37. Upon information and belief, Defendant STEIN never addressed Defendant CARMONA 's inappropriate and discriminatory behavior despite Plaintiff JOHNSON's numerous requests for same. **Instead, when approached, Defendant STEIN quickly dismissed Defendant CARMONA's actions and comments and simply stated: "Well, that's how he [Defendant CARMONA] communicates."**

38. The aforementioned is simply an example of the disrespect, ridicule and unprofessionalism that Plaintiff JOHNSON was exposed to on a continuous basis during her tenure with Defendant STRIVE.

39. Plaintiff JOHNSON was offended by the belittling and harassing remarks and gestures of Defendant CARMONA. While Plaintiff JOHNSON felt the actions of her supervisor were inappropriate, she did not know how to respond to these inappropriate remarks and gestures.

40. Furthermore, on or around September 2011, Mr. Angel Garrido a colleague of Plaintiff JOHNSON, left numerous voice messages and text messages on her company phone. This company phone used to belong to Angelo Rivera, former CEO of Defendant STRIVE, who upon information and belief left Defendant STRIVE on bad terms.

41. Within these messages, Mr. Garrido, believing he was communicating with Mr. Rivera, indicated that he desired to "bring down" Defendant STRIVE.

42. Upon information and belief, Mr. Garrido served several years in jail prior to his employment with Defendant STRIVE. Moreover, during his tenure with Defendant STRIVE, Plaintiff JOHNSON became aware of Mr. Garrido's violent tendencies.

43. Following her receipt of these messages, Plaintiff JOHNSON permitted Defendant CARMONA and members of Defendant STRIVE's senior staff to listen to these voice messages. After reviewing these text messages, Defendant CARMONA asked Plaintiff JOHNSON to respond to these text messages- requesting additional details, which she did apprehensively.

44. Plaintiff JOHNSON merely acquiesced to responding to these messages, in hopes of getting in Defendant CARMONA's good graces to ensure that he would possibly cease harassing and belittling her. Additionally, Plaintiff JOHNSON chose to comply with Defendant CARMONA's request to respond to these messages because she was fearful that her non-compliance with this request would lead to further harassment by Defendant CARMONA.

45. Upon information and belief, after Mr. Garrido was eventually terminated by Defendants on or about September 27, 2011. Despite knowing his violent past and his desires to harm the organization, Defendant STEIN told Mr. Garrido that Plaintiff JOHNSON permitted Defendant CARMONA to hear the messages he left on Plaintiff JOHNSON's company phone.

46. Following Garrido's termination, Plaintiff JOHNSON objected to both Defendant CARMONA and Defendant STEIN regarding how they handled the above situation and how they put her safety at risk. In response, CARMONA and STEIN simply dismissed Plaintiff JOHNSON's concerns.

47. Furthermore, as of present, Defendant CARMONA continues to permit Mr. Garrido to enter the premises at Defendant STRIVE where he has access to Plaintiff JOHNSON and several of her colleagues which obviously makes for a dangerous and hostile working environment for Plaintiff JOHNSON.

48. **Throughout Plaintiff JOHNSON's employment, Defendant CARMONA consistently and continuously harassed, intimidated and belittled Plaintiff JOHNSON.**

49. **Throughout Plaintiff JOHNSON's employment with Defendant STRIVE, Plaintiff JOHNSON was consistently and continuously discriminated against by Defendant CARMONA solely due to her sex (female) and race (Black).**

50. An example of such animus occurred on or about February 2, 2012. At approximately 3:50pm, one of Defendants' programs' past female graduates came into the office to see Plaintiff JOHNSON. Plaintiff JOHNSON was scheduled to attend a staff meeting that was due to begin shortly.

51. The female graduate was a part of Plaintiff JOHNSON's women's group that she implemented, called Embracing Women's Future (EWF). It is a program that has been designed to foster the emotional growth of women in West Harlem and East Harlem, New York while enhancing their creativity. Through a number of networking opportunities, participants will learn to identify, understand, and manage their emotions more effectively.

52. **The EWF graduate explained that she was grateful to Plaintiff and the program for her progress. However, she indicated that while she attended the program she felt that one of male program trainers, Angel Garrido, used the information the female graduate shared regarding her weaknesses and her circumstances to take advantage of her.**

53. Plaintiff JOHNSON was very taken back by her allegations. The female graduate indicated that Mr. Garrido who was one of her trainers had sexually harassed her during her time at Defendant STRIVE. **The graduate gave Plaintiff JOHNSON very explicit details how Mr. Garrido would grab her and ask her what kind of "services would she perform on him."**

54. **The graduate also indicated that she had disclosed some past destructive behaviors to Mr. Garrido and he was using this information to coerce her into performing sexual acts.**

55. Plaintiff JOHNSON explained to the female graduate that Plaintiff JOHNSON would have to report the incident to Plaintiff JOHNSON's supervisors about these allegations.

56. Plaintiff JOHNSON proceeded to the conference room and asked Defendant CARMONA if she could speak to him. Plaintiff JOHNSON briefed him on what the female graduate had just disclosed and requested his guidance as to the next step.

57. Defendant CARMONA requested to speak to the female graduate. He asked Mr. Ernest JOHNSON, Senior Director of Supportive Services, to accompany him. Mr. JOHNSON seemed frazzled and appeared as if he did not want to be bothered with this situation.

58. **Both Defendant CARMONA and Mr. JOHNSON openly grimaced and made gestures demonstrating their disinterest in the female graduate's complaint. Defendant CARMONA and Mr. JOHNSON were very dismissive, cold and appeared uninterested; as the female recounted the details of her ordeal in tears.**

59. Defendant CARMONA and Mr. JOHNSON's reaction was so candid that they made the female graduate and Plaintiff JOHNSON uncomfortable and upset. After the meeting, Plaintiff JOHNSON consoled the female graduate and walked her out. Their meeting end at approximately 5:00pm.

60. Later, Plaintiff JOHNSON received a text from Defendant STEIN inquiring why Plaintiff JOHNSON did not attend the staff meeting. Plaintiff JOHNSON promptly replied, that there was an incident that she, Defendant CARMON and Mr. Johnson were handling with a past graduate.

61. On or about March 2, 2012, at approximately 9:20am Defendant STEIN, Plaintiff JOHNSON's direct supervisor, asked Plaintiff JOHNSON to come into her office. Defendant STEIN expressed how disappointed she was that Plaintiff JOHNSON had not attended the staff meeting. Defendant STEIN also stated that Defendant CARMONA and Mr. Johnson had told her about the incident with the past female graduate and had concluded that Plaintiff JOHNSON had exercised poor judgment.

62. Defendant STEIN stated that as the female graduate was not in imminent danger; Plaintiff JOHNSON should have told her to come back another time. Defendant STEIN further noted that the situation was a "code yellow" and not a "code red."

63. A few days later, Defendant CARMONA approached Plaintiff JOHNSON, and indicated that she used poor judgment regarding the incident with the female past graduate. Plaintiff asked Defendant CARMONA how should she have handled it. **Defendant CARMONA promptly replied, that the female graduate "was a whore" and that no one could tell him that "she didn't enjoy it." Defendant CARMONA went on to say the past graduate was "ugly as shit" and he did not believe that Mr. Garrido would try to come on to her.**

64. By way of example, on or about March 2012 Plaintiff JOHNSON had a conversation with Defendant CARMONA in his office. During this conversation, Plaintiff JOHNSON fell victim to the peak of Defendant CARMONA's discriminatory and harassing comments and behavior.

65.      Specifically, during this conversation, Plaintiff JOHNSON approached Defendant CARMONA in order to receive clarification regarding a comment he had made the day before. In the midst of her colleagues, Defendant CARMONA indicated to Plaintiff JOHNSON, that "y'all two are just alike".

66.      In response to Plaintiff JOHNSON's request for clarification regarding Defendant CARMONA's perception of Plaintiff JOHNSON, **Defendant CARMONA stated: "You and her are just alike. Both of you are smart as shit, but dumb as shit. You know what it is…both of you [referencing Plaintiff JOHNSON] are NIGGERS…Y'all act like NIGGERS all the time."**

67.      In response, Plaintiff JOHNSON retorted that she was offended by the comment and that during her time at STRIVE she had really grown.

68.      **In strong opposition, Defendant CARMONA stated: "Brandi[Plaintiff JOHNSON], you and her [Leticia Thomas] act like NIGGERS and NIGGERS let their feelings rule them…I'm gonna give it to you hardcore. You and her are the same. You and her are very bright…but y'all act like NIGGERS…seriously. In response, Plaintiff JOHNSON stated: "For the record, I beg to differ, but I will leave it alone." Defendant CARMONA then responded: "You beg to differ? Then go ask a couple people what they think and go with what they say. Seriously…But you's is the same."**

69.      **In response, Plaintiff JOHNSON asked Defendant CARMONA what he meant when he stated that Plaintiff JOHNSON and [Leticia Thomas] are "just alike." Defendant CARMONA then replied: "Because like I said, y'all are both very bright, but both of y'all act like NIGGERS at inappropriate times." Plaintiff JOHNSON again stated: "I disagree, but ok." Defendant CARMONA then retorted: "There is**

**nothing to disagree with. You can disagree all you want. You go out and ask people, they are gonna tell you the same thing."**

70. On April 11, 2012, Plaintiff sent a formal complaint to Defendant WEINBERG apprising him of the numerous harassing, discriminatory and retaliatory acts she had endured from Defendants CARMONA and STEIN.

71. Since making the April 2012 complaint, Defendants CARMONA and STEIN discriminatory and retaliatory actions has intensified.

72. Defendant CARMONA has sought to isolate, humiliate and retaliate against Plaintiff by preventing staff and clients from communicating and/or socializing with Plaintiff.

73. On or about May 31, 2012, at approximately 12:15 pm, Jamar Cooks, a past participant, visited Plaintiff JOHNSON's office to update her on what was going on with him, to ask her about computer classes, and to get information regarding how to register for GED classes.

74. While Mr. Cooks was in Plaintiff JOHNSON's office, a coworker named Crystal Batista asked Mr. Cooks to come to her office.

75. **Defendant CARMONA then walked into Ms. Batista's office and told Mr. Cooks, in a loud voice, that he is no longer allowed to come to Defendant STRIVE's office to see Plaintiff JOHNSON, and if Plaintiff JOHNSON ever asked him to come, that he should tell her "no."**

76. However, rather shockingly, Defendant CARMONA told Mr. Cooks that it was okay for him to continue to visit Ms. Batista, just not Plaintiff JOHNSON. **This was clearly done solely due to Defendant CARMONA's discriminatory animus against Plaintiff JOHNSON as well as in retaliation for complaining about Defendants' blatant discrimination.**

77. As such, immediately upon hearing this, Plaintiff JOHNSON attempted to complain about the discrimination and retaliation to Defendant STEIN and Defendant STRIVE's Defendant WEINBERG, who were both in Defendant STEIN's office.

78. However, when Plaintiff JOHNSON knocked on Defendant STEIN's door, she realized that Defendant CARMONA was also present, at which point Defendant CARMONA blocked, and then slammed, the door in Plaintiff JOHNSON's face, **wholly preventing Plaintiff JOHNSON from being able to make any complaint of discrimination and retaliation. Defendants STEIN and WENBERG did nothing and instead acquiesced in Defendant CARMONA's actions.**

79. **When Plaintiff attempted to discuss Defendant CARMONA's actions with Defendant WEINBERG and object to Defendant WEINBERG failure to reprimand or otherwise prevent Defendant CARMONA's actions, Defendant WENBERG indicated that he did not wish to address Defendant CARMONA's actions. Instead, he indicated that Plaintiff was "out of line" and "emotional".**

80. Plaintiff JOHNSON felt and continues to feel offended, disturbed, and humiliated by Defendant CARMONA's above discriminatory and retaliatory comments and conduct.

81. Defendants created a hostile working environment for Plaintiff JOHNSON as a result of the forgoing.

82. The above are just some of the acts of harassment and discrimination that Plaintiff JOHNSON experienced on a regular and continual basis while employed by Defendant STRIVE.

83. Plaintiff JOHNSON was **treated differently** (**harassed and discriminated against**) by Defendants solely **because she is a female.**

84. Plaintiff JOHNSON was **treated differently** (**harassed and discriminated against**) by

Defendants solely **because she is African-American.**

85. Plaintiff CAJAMARCA was regularly exposed to differential treatment and a hostile work environment because of her sex and race by Defendant CARMONA, who was her superior.

86. **Upon information and belief, a separate sexual harassment and gender discrimination lawsuit has been brought forth against Defendant STRIVE by a former employee following instances of discrimination that she was exposed to in the summer of 2010 that are similar to Plaintiff JOHNSON's present complaints.**

87. Defendant STRIVE **had knowledge of and/or acquiesced in** the discrimination and harassment by Defendant CARMONA, as **Plaintiff JOHNSON complained to Defendant STEIN on numerous occasions regarding his behavior. Defendant STEIN has dismissed Plaintiff JOHNSON's complaints stating, "that's ROB."**

88. On one occasion, in June 2012, while two co-workers were having lunch with Plaintiff, Defendant CARMONA told them to "wrap it up". When one of the co-workers objected, indicating that the three were "on lunch". Defendant CARMONA again told them to "wrap it up." Upon information and belief, prior to Plaintiff's complaints she was permitted to eat lunch at her desk with other co-workers without issue.

89. When these two co-workers and Plaintiff attempted to complain regarding Defendant CARMONA's actions to Defendant WEINBERG, the matter was not appropriately addressed. The three recounted to Defendant WEINBERG the details of the day's events and gave further information about a continued pattern by Defendant CARMONA to single out or otherwise retaliate against those who objected to his behavior. Upon information and belief, Defendant WEINBERG did not reprimand Defendant CARMONA.

90.    Upon information and belief, Defendant CARMONA has discussed the facts of the Plaintiff's complaints with other STRIVE staff, not involved in the allegations, in an attempt to dissuade Plaintiff from making any additional complaints of his behavior.

91.    **Defendant CARMONA told the two co-workers who had complained of his actions toward them and Plaintiff Johnson during lunch that they should "be careful" and not allow themselves "to be used". CARMONA reminded one the co-workder that he had done her favor by not reporting her when she had dozed off at her desk and that she should be reminded of his past kindnesses to her. When the two co-workers asked for additional information, Defendant CARMONA told them to "ask around to [their] colleagues". Defendant CARMONA warned the two workers, "don't make strides and allow yourselves to be pulled backwards". He further stated that "you guys are in a good place, don't fall off".**

92.    In addition, knowing Defendant CARMONA temper and abusive discriminatory tactics Defendant STEIN will often bring complaints about Plaintiff JOHNSON to Defendant CARMONA stating, "go get her".

93.    Plaintiff has been unlawfully discriminated against, was humiliated, was harassed, has been degraded and belittled; and as a result suffers loss of rights, emotional distress, loss of income, earnings and physical injury.

94.    As a result of the discriminatory conduct comments by the Defendants, Plaintiff JOHNSON has sought medical treatment for her emotional distress.

95.    Plaintiff's performance was, and is, upon information and belief, above average during the course of employment with the Defendants.

96.    Plaintiff JOHNSON was regularly exposed to a discriminatorily offensive and hostile work environment.

97. Defendants' actions and conduct were intentional and intended to harm the Plaintiff.

98. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

99. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, Plaintiff has suffered severe emotional distress and physical ailments.

100. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

101. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of the Court.

102. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands Punitive Damages as against both Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (sexual harassment).

105.   Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her gender.

**AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

106.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

107.   The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

108.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her gender.

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

109.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

110.   The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire

or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

111.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her race.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

112.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

113.    The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

114.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

115.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

116.    New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a.    An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

    1.   the employee or agent exercised managerial or supervisory responsibility; or

    2.   the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

    3.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

81.    Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER 42 U.S.C. Section 1981
## ON BEHALF OF PLAINTIFF
## AS AGAINST ALL DEFENDANTS

117. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

118. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C.A. § 1981

119. Defendants violated the above section as set forth herein.

**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**ON BEHALF OF PLAINTIFF**
**AS AGAINST DEFENDANT STRIVE ONLY**

120. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

121. Title VII states in relevant part, SEC. 2000e-2. *[Section 703]*

(a) Employer practices

It shall be an unlawful employment practice for an employer -

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

122. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her race.

123. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## INJURY AND DAMAGES

124. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to her reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## JURY DEMAND

Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practice prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq.; The New York City Administrative Code, §8-107 et. seq.; and state common law, that the Defendants discriminated against and harassed the Plaintiff on the basis of her gender and race;

B. Awarding damages to the Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result

of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.


Dated: New York, New York
      April 10, 2012

**PHILLIPS & PHILLIPS**
**ATTORNEYS AT LAW, PLLC**

Marjorie Mesidor (MM1978)
30 Broad Street, 35th Floor
New York, NY 10004
(212) 248-7431
MMesidor@tpglaws.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X      Case No.

BRANDI JOHNSON,

         Plaintiff,

   v.

STRIVE EAST HARLEM EMPLOYMENT GROUP,
LISA STEIN, *Individually*, ROB CARMONA, *Individually*
and PHIL WEINBERG, *Individually*

         Defendants.

-------------------------------------------------------------------X

---

### SUMMONS & COMPLAINT

---



## ATTORNEYS AT LAW
### 30 Broad Street, 35th Floor, New York, NY 10004