UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

BRANDI JOHNSON,

                Plaintiff,

v.

STRIVE EAST HARLEM EMPLOYMENT GROUP,
LISA STEIN, *Individually*, ROB CARMONA, *Individually*
and PHIL WEINBERG, *Individually*

                Defendants.
-----------------------------------------------------------------X

Case No.: 12-CV-4460 (HB)

**AMENDED**
**COMPLAINT**

PLAINTIFF DEMANDS
A TRIAL BY JURY

Plaintiff, BRANDI JOHNSON, by her attorneys, PHILLIPS & PHILLIPS ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to 42 U.S.C. §1981 and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), et. seq., and seeks damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed, discriminated against because of her race and sex, retaliated against, severely humiliated, mentally anguished, and emotionally and physically distressed by the Defendants. **Defendant CARMONA while supervising Plaintiff has berated, belittled and addressed Plaintiff Johnson, calling her a "NIGGER", has told her that she was too "emotional" when she brought a client's complaint of sexual harassment to his attention while claiming that the client was "WHORE" "UGLY AS SHIT" and no one couldn't tell him that the client "DIDN'T ENJOY" it. Defendant CARMONA has also prevented Plaintiff from complaining about his behavior by intimidating her, slamming a door in her face and isolating her from co-workers and client by**

**reprimanding those who would speak or otherwise socialize with Plaintiff.**

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the claims of plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district based upon the fact that a substantial part of the events giving rise to the claim occurred within the County of New York, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

4. That at all times relevant hereto, Plaintiff BRANDI JOHNSON ("JOHNSON") is a resident of the State of New York and County of New York.

5. That at all times relevant hereto, Defendant STRIVE EAST HARLEM EMPLOYMENT GROUP ("STRIVE") was and is a workforce development non-profit organization duly existing by virtue of the laws of the State of New York.

6. That at all times relevant hereto, Defendant STRIVE owns and/or operates, among others, an employment services center located at 240 East 123rd Street, 3rd Floor, New York, New York.

7. That at all times relevant hereto, Defendant ROB CARMONA ("CARMONA") was and is a resident of the State of New York.

8. That at all times relevant hereto, Defendant LISA STEIN ("STEIN") was and is a resident of the State of New York.

9. That at all times relevant hereto, Defendant PHIL WEINBERG ("WEINBERG") was and

is a resident of the State of New York.

10. That at all times relevant hereto, Defendant CARMONA was and is an employee of Defendant STRIVE, golding the position of "Owner" and "Founder."

11. That at all times relevant hereto, Defendant stein was and is an employee of Defendant STRIVE, holding the position of "Chief Operating Officer" and "Chief Financial Officer."

12. That at all times relevant hereto, Defendant WEINBERG was and is an employee of Defendant STRIVE.

13. That at all times relevant hereto, Defendant CARMONA was Plaintiff JOHNSON's supervisor and/or held supervisory authority over Plaintiff JOHNSON.

14. That at all times relevant hereto, Defendant STEIN was Plaintiff JOHNSON's supervisor and/or held supervisory authority over Plaintiff JOHNSON.

15. That at all times relevant hereto, Defendant WEINBERG was Plaintiff JOHNSON's supervisor and/or held supervisory authority over Plaintiff JOHNSON.

16. That at all times relevant hereto, Plaintiff JOHNSON was an employee of Defendant STRIVE.

17. Plaintiff JOHNSON is an African-American female.

18. Plaintiff JOHNSON earned approximately $60,000 a year.

19. Defendant STEIN is a Caucasian female.

20. Defendant CARMONA is a Hispanic-American male.

21. Defendant WEINBERG is a Caucasian male.

22. Defendant STRIVE, Defendant CARMONA, Defendant STEIN and Defendant WEINBERG are collectively referred to herein as "Defendants."

## **MATERIAL FACTS**

23. On or about May 5, 2010, Plaintiff JOHNSON began working for Defendant STRIVE as a "Pathways Out of Poverty Program Manager/National Affiliate Services Coordinator" at Defendant STRIVE's East Harlem office located at 240 East 123rd Street, 3rd Floor, New York, New York.

24. At all times relevant hereto, Plaintiff JOHNSON was an exemplary employee.

25. Throughout her tenure with Defendant STRIVE, Plaintiff JOHNSON always received compliments for her work performance and got along well with all of her co-workers.

26. However, this all changed in or about 2010 when Defendant CARMONA began to belittle and disrespect Plaintiff JOHNSON on a continuous and repetitive basis, solely due to Plaintiff's race and gender.

27. Throughout Plaintiff JOHNSON's employment with Defendant STRIVE, Plaintiff JOHNSON was consistently and continuously discriminated against by Defendant CARMONA solely due to her sex (female) and race (Black).

28. An example of such animus occurred on or about February 2, 2012, when one of Defendants' programs' past female graduates came into the office to see Plaintiff JOHNSON. The female graduate was a part of Defendants' women's group, called Embracing Women's Future (EWF). The EWF graduate explained that while she attended the program she felt that one of male program trainers, Angel Garrido, used the information the female graduate shared regarding her weaknesses and her circumstances to take advantage of her.

29. The female graduate indicated that Mr. Garrido who was one of her trainers had sexually harassed her during her time at Defendant STRIVE. The graduate gave Plaintiff JOHNSON very explicit details how Mr. Garrido would grab her and ask her what kind

4

of "services would she perform on him."

30. The graduate also indicated that she had disclosed some past destructive behaviors to Mr. Garrido and he was using this information to coerce her into performing sexual acts.

31. Plaintiff JOHNSON explained to the female graduate that she would report the incident.

32. As such, on or about February 2, 2012, Plaintiff JOHNSON briefed Defendant CARMONA and Mr. Ernest Johnson on what the female graduate had just disclosed and requested his guidance as to the next step.

33. Both Defendant CARMONA and Mr. Johnson openly grimaced and made gestures demonstrating their disinterest in Plaintiff JOHNSON's complaint of sexual harassment against the female graduate.

34. Defendant CARMONA and Mr. Johnson's reaction was so candid that they made the female graduate and Plaintiff JOHNSON uncomfortable and upset.

35. On or about March 2, 2012, once Defendant STEIN was briefed on the sexual harassment against the female graduate, Defendant STEIN stated that as the female graduate was not in imminent danger; Plaintiff JOHNSON should have told her to come back another time. Defendant STEIN further noted that the situation was a "code yellow" and not a "code red."

36. A few days later, Defendant CARMONA approached Plaintiff JOHNSON, and indicated that she used poor judgment regarding the incident with the female past graduate. **Defendant CARMONA promptly replied, that the female graduate "was a whore" and that no one could tell him that "she didn't enjoy it." Defendant CARMONA went on to say the past graduate was "ugly as shit" and he did not believe that Mr. Garrido would try to come on to her.** Subsequently, Defendant CARMONA continued to discriminate against Plaintiff JOHNSON solely due her race and gender.

5

37. By way of further illustration, in or about March 2012 Plaintiff JOHNSON approached Defendant CARMONA in order to receive clarification regarding a comment he had made the day before. In the midst of her colleagues, Defendant CARMONA indicated to Plaintiff JOHNSON, that "y'all two are just alike".

38. In response to Plaintiff JOHNSON's request for clarification regarding Defendant CARMONA's perception of Plaintiff JOHNSON, **Defendant CARMONA stated: "You and her are just alike. Both of you are smart as shit, but dumb as shit. You know what it is…both of you [referencing Plaintiff JOHNSON and co-worker Leticia Thomas] are NIGGERS…Y'all act like NIGGERS all the time."**

39. **Defendant CARMONA continued: "Brandi[Plaintiff JOHNSON], you and her [Leticia Thomas] act like NIGGERS and NIGGERS let their feelings rule them…I'm gonna give it to you hardcore. You and her are the same. You and her are very bright…but y'all act like NIGGERS…seriously.**

40. In response, Plaintiff JOHNSON asked Defendant CARMONA what he meant when he stated that Plaintiff JOHNSON and [Leticia Thomas] are "just alike." **Defendant CARMONA replied: "Because like I said, y'all are both very bright, but both of y'all act like NIGGERS at inappropriate times."** Plaintiff was humiliated by Defendant CARMONA's discriminatory comments.

41. On or about April 11, 2012, Plaintiff sent a formal complaint to Defendant WEINBERG apprising him of the numerous harassing, discriminatory and retaliatory acts she had endured from Defendants.

42. Since making the April 2012 complaint, Defendants CARMONA and STEIN discriminatory and retaliatory actions has intensified.

43. Defendant CARMONA has sought to isolate, humiliate and retaliate against Plaintiff by

6

preventing staff and clients from communicating and/or socializing with Plaintiff.

44. On or about May 31, 2012, Jamar Cooks, a past participant, visited Plaintiff JOHNSON's office to update her on what was going on with him, to ask her about computer classes, and to get information regarding how to register for GED classes.

45. While Mr. Cooks was in Plaintiff JOHNSON's office, a coworker named Crystal Batista asked Mr. Cooks to come to her office.

46. Defendant CARMONA then walked into Ms. Batista's office and told Mr. Cooks, in a loud voice, that he is no longer allowed to come to Defendant STRIVE's office to see Plaintiff JOHNSON, and if Plaintiff JOHNSON ever asked him to come, that he should tell her "no."

47. However, rather shockingly, Defendant Carmona told Mr. Cooks that it was okay for him to continue to visit Ms. Batista, just not Plaintiff JOHNSON. This was clearly done solely due to Defendant CARMONA's discriminatory animus against Plaintiff JOHNSON as well as in retaliation for complaining about Defendants' blatant discrimination.

48. As such, Plaintiff JOHNSON attempted to complain about the discrimination and retaliation to Defendant STEIN and Defendant STRIVE's Defendant WEINBERG, who were both in Defendant Stein's office.

49. However, when Plaintiff JOHNSON knocked on Defendant STEIN's door, she realized that Defendant CARMONA was also present, at which point Defendant CARMONA blocked, and then slammed, the door in Plaintiff JOHNSON's face, wholly preventing Plaintiff JOHNSON from being able to make any complaint of discrimination and retaliation. Defendants STEIN and WENBERG did nothing and instead acquiesced in Defendant CARMONA's actions.

7

50. When Plaintiff attempted to discuss Defendant CARMONA's actions with Defendant WEINBERG and object to Defendant WEINBERG failure to reprimand or otherwise prevent Defendant CARMONA's actions, Defendant WENBERG indicated that he did not wish to address Defendant CARMONA's actions. Instead, he indicated that Plaintiff was "out of line" and "emotional".

51. Upon information and belief, a separate sexual harassment and gender discrimination lawsuit has been brought forth against Defendant STRIVE by a former employee following instances of discrimination that she was exposed to in the summer of 2010 that are similar to Plaintiff JOHNSON's present complaints.

52. Defendant STRIVE had knowledge of and/or acquiesced in the discrimination and harassment by Defendant CARMONA, as Plaintiff JOHNSON complained to Defendant STEIN on numerous occasions regarding his behavior. Defendant STEIN has dismissed Plaintiff JOHNSON's complaints stating, "that's ROB."

53. Upon information and belief, Defendant CARMONA has discussed the facts of the Plaintiff's complaints with other STRIVE staff, not involved in the allegations, in an attempt to dissuade Plaintiff from making any additional complaints of his behavior.

54. In addition, knowing Defendant CARMONA's temper and abusive discriminatory tactics Defendant STEIN would often bring complaints to Defendant CARMONA about Plaintiff JOHNSON stating, "go get her."

55. On or about June 11, 2012, Plaintiff JOHNSON received a letter of termination from Defendant WEINBERG. Plaintiff was terminated solely in retaliation of her complaints of sexual harassment and gender and race discrimination.

56. Plaintiff JOHNSON felt and continues to feel offended, disturbed, and humiliated by Defendant CARMONA's above discriminatory and retaliatory comments and conduct.

8

57. Defendants created a hostile working environment for Plaintiff JOHNSON as a result of the forgoing.

58. The above are just some of the acts of harassment and discrimination that Plaintiff JOHNSON experienced on a regular and continual basis while employed by Defendant STRIVE.

59. Plaintiff JOHNSON was treated differently (harassed and discriminated against) by Defendants solely because she is African-American and female.

60. Plaintiff JOHNSON was regularly exposed to differential treatment and a hostile work environment because of her sex and race by Defendant CARMONA, who was her superior.

61. Plaintiff has been unlawfully discriminated against, was humiliated, was harassed, has been degraded and belittled; and as a result suffers loss of rights, emotional distress, loss of income, earnings and physical injury.

62. As a result of the discriminatory conduct comments by the Defendants, Plaintiff JOHNSON has sought medical treatment for her emotional distress.

63. Defendants' actions and conduct were intentional and intended to harm the Plaintiff.

64. Plaintiff's performance was, upon information and belief, above average during the course of employment with the Defendants.

65. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, severely emotional distressed, and suffered physical ailments.

66. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

Plaintiff has further experienced severe emotional and physical distress.

67. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of the Court.

68. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands Punitive Damages as against both Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER 42 U.S.C. § 1981
## ON BEHALF OF PLAINTIFF
## AS AGAINST ALL DEFENDANTS

69. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

70. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

71. Defendants violated the above section by discriminating against Plaintiff, solely due to her race and by retaliating against her for complaints of discrimination.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

72. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. The Administrative Code of City of NY § 8-107 [1] provides that:

    It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

74. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her race and gender.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

75. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

77. The New York City Administrative Code Title 8, §8-107 (7) provides that:

    It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter...

78. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating,

and otherwise discriminating against the Plaintiff, including, but not limited to, terminating Plaintiff's employment because she opposed Defendants' unlawful employment actions.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

79. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

81. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

82. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon

the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

1. the employee or agent exercised managerial or supervisory responsibility; or

2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

3. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

84. Defendants violated the section cited herein as set forth.

### INJURY AND DAMAGES

85. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering,

13

inconvenience, injury to her reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §1981; and The New York City Administrative Code, §8-107 et seq., that the Defendants discriminated against and harassed the Plaintiff on the basis of her gender and race;

B. Awarding damages to the Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
August 20, 2012

15

                    **PHILLIPS & PHILLIPS**
                    **ATTORNEYS AT LAW, PLLC**

                    _/s/ J. Maldonado_
                    Marjorie Mesidor (MM1978)
                    Jessenia Maldonado (JM7811)
                    30 Broad Street, 35th Floor
                    New York, NY 10004
                    (212) 248-7431
                    MMesidor@tpglaws.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BRANDI JOHNSON,

                Plaintiff,

       v.

STRIVE EAST HARLEM EMPLOYMENT GROUP,
LISA STEIN, *Individually*, ROB CARMONA, *Individually*
and PHIL WEINBERG, *Individually*

              Defendants.
------------------------------------------------------------------X

---

**AMENDED COMPLAINT**

---

# PHILLIPS & PHILLIPS
**Attorneys at Law PLLC**
**Attorneys for Plaintiffs**
**30 Broad Street, 35th Floor**
**New York, NY 10004**
**(212) 248-7431**