```
d1v2johc
```

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   BRANDI JOHNSON,

4             Plaintiff,              New York, N.Y.

5         v.                          12 Civ. 4460(HB)(MHD)

6   LISA STEIN, et al.,

7             Defendants.

8   ------------------------------x

9                                     January 31, 2013
                                      2:15 p.m.
10
    Before:
11
                    HON. MICHAEL H. DOLINGER,
12
                                      Magistrate Judge
13

14

15

16                         APPEARANCES

17
    PHILLIPS & PHILLIPS
18       Attorneys for Plaintiff
    BY:  MARJORIE MESIDOR
19

20  GORDON & REES, LLP
         Attorneys for Defendants
21  BY:  SARIR ZANDI SILVER

22

23

24

25

1          (In open court)

2          THE COURT: What is the current status of this case?

3          MS. MESIDOR: Good afternoon, your Honor. Marjorie
4   Mesidor for the plaintiff.

5          The current status of the case, your Honor, is that
6   plaintiffs and defendants have exchanged preliminary requests
7   for document production as well as interrogatory requests, your
8   Honor. Plaintiffs served their responses to defendants'
9   document request and interrogatories back in October 26. As
10  recent as January the 18th, your Honor, we received the
11  preliminary production from opposing counsel in this matter.
12  However, we have a deficiency letter to opposing counsel that
13  highlights additional deficiencies with their production.

14         We have had one mediation session, your Honor, through
15  the SDNY mediation program.

16         There have been no depositions in this case, your
17  Honor.

18         The issues highlighted and the discovery motion that
19  is brought before your Honor was highlighted for plaintiff --
20  was brought by plaintiff prior to receiving the initial
21  discovery that defendants have turned over, and it also relates
22  to an issue of certain audio recordings that plaintiff has in
23  her possession that we would like permission to give over to
24  defendants after the depositions have taken place.

25         MS. SILVER: Your Honor, may I --

1          THE COURT:  What is your schedule?

2          MS. MESIDOR:  Discovery is due to be complete on this

3   matter, your Honor, on April 1.

4          THE COURT:  Is that all discovery or fact discovery?

5          MS. MESIDOR:  If memory serves correctly, your

6   Honor -- my apologies for not having the specifics to answer

7   your question appropriately -- I believe it is just fact

8   discovery that is due to be done by April 1.

9          THE COURT:  Okay.

10         Let me ask this.  You say you have gotten what you

11  refer to as a preliminary production January 18 for which you

12  note there are deficiencies.

13         MS. MESIDOR:  Yes, your Honor.

14         THE COURT:  Have you engaged in any discussions with

15  defendants' counsel about those asserted deficiencies?

16         MS. MESIDOR:  We have not -- well, yes and no.  Prior

17  to the -- and let me explain that, your Honor.  Prior to us

18  receiving the January 18 production, we received from counsel

19  their purported responses to the interrogatories which did not

20  give us any information and their objections to the production.

21  This was back in December, but no documents attached.  So we

22  had drafted a deficiency letter that indicated that no

23  documents were attached and that there were deficiencies in the

24  interrogatories.  Subsequently, we did get an initial

25  production of the documents that cured the production

1  deficiency in that we had said no production was actually given
2  over, but it did not cure the interrogatory deficiency that has
3  not yet been cured.
4          THE COURT:  And that has not been the subject of
5  discussion with counsel on the other side?
6          MS. MESIDOR:  No, your Honor.  Neither is it a subject
7  of discussion nor really the subject of the letter that we
8  brought before the court, because part of the letter that was
9  brought before the court, part of that issue is moot by the
10 production of the documents that we received from defendants on
11 January 18.
12         THE COURT:  So there is not a dispute about the
13 document production, it is only a dispute about the
14 interrogatories.
15         MS. MESIDOR:  There is certainly a dispute about the
16 interrogatories.  The document production has not been
17 thoroughly reviewed yet to see whether all deficiencies have
18 been cured because the original deficiency letter said you gave
19 us no documents whatsoever.
20         THE COURT:  January 18 you got these documents.  We
21 are now January 31.  When were you planning on completing your
22 review of these documents?
23         MS. MESIDOR:  Your Honor, I have had four depositions
24 since that period of time, and I have also been out sick, so
25 that is the reason why I have not had an opportunity to really

1   go through the documents to see if every single request that we
2   made was indeed complied with, for me to do a detailed
3   deficiency letter highlighting which ones have not been
4   complied with.
5        I have done a cursory review of the documents and I
6   can say, your Honor, that mostly the documents that we have are
7   documents that are already within our client's possession.  It
8   was a copy of our draft complaint, it was a copy of our already
9   submitted complaint.  We are talking about a very small
10  production of about 250 pages, your Honor, when our
11  production -- when our request included the request for grant
12  applications under which our client's position was being
13  funded.  We had asked for personnel records of our client which
14  is not included in the production.  We had asked for personnel
15  records for certain individual defendants.  We asked for
16  certain personnel records of other employees who were funded
17  under the same grant that my client was also funded and we
18  didn't receive those either.  Those are certain things that,
19  off the top of my head, your Honor, having a cursory view of
20  the production I can highlight have not been done.  But in
21  terms of answering your Honor's question as to whether or not
22  the specific deficiencies have been bought to defense counsel's
23  attention, no, they have not, your Honor.
24       THE COURT:  Any other issues?
25       MS. MESIDOR:  The second issue that was highlighted,

1     your Honor, is a matter that we wanted to bring before the
2     court.  Our client has certain recordings that she made in
3     anticipation of litigation during the time in which she was
4     still currently employed with defendant's -- with defendant's
5     organization.  We are requesting permission from the court.  We
6     do not dispute that these item are discoverable.  We do not
7     dispute that defendants are entitled to them, your Honor.  The
8     only thing that we are asking is that within the court's
9     discretion the court can dictate the sequence of the production
10    of certain materials, and we are requesting, based on the
11    authority that is highlighted in our letter, your Honor, and I
12    am fully able to discuss any one of the cases that are
13    highlighted in the letter, to be permitted to do one of two
14    things.  Either, one, after the deposition of the individual
15    employees in this matter, for us to be able to turn over the
16    tapes at that time or for the tapes to be, as was done in a
17    matter before Judge Hellerstein, for the tapes to be placed in
18    some sort of closed circuit box where neither party has access
19    to them and neither party can use them until the conclusion of
20    all depositions.
21              And the reason why we have this, your Honor, is for
22    two reasons, the primary reasons being that, your Honor, it is
23    our office's habit prior to filing any lawsuits to reach out to
24    the purported defendant, send them a claim letter and a copy of
25    the alleged complaint to highlight some of the issues to see if

1    there might be some resolution.  We were contacted by
2    defendants' attorneys at the time who had indicated that they
3    were doing an investigation and that -- and when their
4    investigation was concluded they indicated that the entire
5    thing was a complete fabrication, that they had spoken to all
6    employees, everybody emphatically denies it.  These recordings,
7    your Honor, would rebut whatever purported statements the
8    employees, including individual defendants, made as to the
9    specific events highlighted in our compliant.  Since defendants
10   already have seemed to have gone on record as completely
11   rebutting the entire sequence of events, we are not just
12   talking about specific facts, your Honor, they deny the whole
13   thing happened, then it is our belief that their deposition
14   testimony will be consistent.  What we do not want to do is to
15   give over the audio recording and then defendants who have
16   purportedly already gone on record as stating one version of
17   the facts to then tailor their testimony, their comments or
18   what have you to what they believe that we have in their hands.
19   The employees should simply tell the truth, your Honor.
20           And, your Honor, we have provided a number of
21   different cases that cite the very reason that we have brought
22   before your Honor.  One of them was before his Honor Judge
23   Baer, the district court in this matter, and he had also
24   reasoned the same way that we had reasoned, that the deponent
25   should not be permitted to tailor their testimony according to

1  the recordings.  The recordings, your Honor, were prepared in
2  anticipation of litigation and they are used for impeachment
3  purposes only, your Honor.  And while we do agree that they are
4  discoverable and we do agree that defendants are certainly
5  entitled to them, we are simply asking that the sequence of
6  their production be permitted after the deposition, to
7  preserve -- to make sure that any issues regarding defendants'
8  accuracy of or testimony regarding same is not going to be
9  tailored based upon what they believe that plaintiffs have in
10 their hands, your Honor.
11            It should also be noted that I had an opportunity also
12 to read opposing counsel's opposition in which they cite to the
13 case of Rofail v. United States of America, 227 FRD 53, which
14 was a matter that was cited before Judge Azrack in the Eastern
15 District of New York, your Honor.  Not only does that case
16 specifically state that within the Southern District of New
17 York there is a clear split as to whether or not a protective
18 order -- what level of good cause should be shown for a
19 protective order.  There are certain judges who find that
20 specific examples of the reasons for a protective order must be
21 very fact specific.  There are also other judges that indicate
22 the specificity is not really required from the fact
23 perspective, which was one of the arguments that defendant
24 highlighted in terms of our motion for a protective order.
25 They felt that our motion for a protective order was premature

1    because we had not yet shown a good-faith basis.  Defendants
2    also inaccurately indicate that we had not made an attempt --
3    that no attempt was made to have some sort of discussion
4    regarding these audio recordings.  Opposing counsel had
5    actually reached out to our office and they indicated in your
6    amended production, you indicate that you have some recordings
7    and that these would be subject to a motion for a protective
8    order.  However, our office has not received a protective
9    order -- I mean a motion for a protective order.  Sorry, your
10   Honor.  And they wanted to know if whether or not we could just
11   come into some sort of confidentiality agreement and whether
12   that would suffice.  We replied that that would not suffice and
13   that we would move forward with moving for a protective order
14   before the court, because we didn't believe that a
15   confidentiality would really suffice in that regard.
16            THE COURT:  You mentioned, by the way, that the
17   defendants had gone on record saying certain things that you
18   say are contradicted by these audiotapes.
19            MS. MESIDOR:  Yes, your Honor.
20            THE COURT:  In what form have they gone on record?
21            MS. MESIDOR:  I suspected that was the nature of your
22   question, your Honor.  When I say they have gone on record,
23   defendants' counsel purport to have signed statements from all
24   the employees and the individual defendants that basically deny
25   the entire course of events.  We have requested those signed

1  statements, your Honor, in our document production, and that's
2  part of the deficiency.  Those have not been provided, but they
3  have indicated that they wholly denied that there is no aspect
4  in anything that we put in our complaint that could be
5  corroborated in that there is a serious issue as to our
6  client's credibility.  We know that the issue of credibility is
7  certainly for the fact-finder.  We are leaving that issue
8  aside, your Honor.  Having said that they have spoken to all
9  the employees, did an extensive investigation, and nothing was
10 corroborated at all, when the people on the audio recordings
11 are the very employees that they are purportedly speak to, then
12 it is our position that they have --
13         THE COURT:  I suppose if the people on the audiotape
14 said one thing, that is, I assume you are referring to as
15 corroborative of your client's allegations, then it is evidence
16 that -- the tape will show what it will show.  You have
17 essentially described it.  I don't understand what this
18 tailoring of evidence is going to be.  If, as you say, the
19 folks on the other side have said, no, we spoke to whomever we
20 spoke to and they told us X, people may have said X to one side
21 and Y to the other side.  I don't understand what the tailoring
22 danger is in this case.
23         MS. MESIDOR:  Okay.  The reason why we say that there
24 is tailoring danger is because when I had specific discussions
25 and when I say opposing counsel, I am certainly not referring

1   to opposing counsel as she sits here today, but defendant's
2   prior counsel.  When I spoke to her in detail as to what do you
3   mean nothing was evidence and I actually went through with her
4   in the complaint, I said, do you mean to tell me that when you
5   spoke to this person at Strive, they said that this sequence of
6   events never happened, that they never met on these dates, that
7   these words were never said?  And she said, That's exactly what
8   I am telling you.  And I said, Well, send over those statements
9   so that we could see them.  We have yet, not only did I make
10  the request prior to litigation, when of course it would just
11  be a matter of courtesy, but I have subsequently made the
12  request within this litigation and two requests for document
13  production, and they have not been provided.
14            THE COURT:  That goes back to October?
15            MS. MESIDOR:  I'm sorry, your Honor?
16            THE COURT:  That goes back to October?
17            MS. MESIDOR:  Yes, your Honor.
18            THE COURT:  Any other issues?
19            MS. MESIDOR:  I'm sorry, your Honor?
20            THE COURT:  Any other issues.
21            MS. MESIDOR:  No, your Honor.
22            THE COURT:  Okay.
23            MS. SILVER:  May I, your Honor?
24            THE COURT:  Yes.
25            MS. SILVER:  How are you?

1            A few things.  First of all, for what it is worth, we
2    served our document production on January 14 and it was 250 --
3            THE COURT:  That's a complete production of all
4    matters sought by the initial document request of the
5    plaintiff?
6            MS. SILVER:  What happened, your Honor --
7            THE COURT:  That calls for a yes or no.
8            MS. SILVER:  Well, I'm not sure, your Honor, is the
9    answer.
10           THE COURT:  You don't know.
11           MS. SILVER:  I'm going to explain if your Honor will
12   let me.
13           THE COURT:  Okay.
14           MS. SILVER:  We had the hurricane hit in October.  We
15   just got back into our offices yesterday because there was
16   mold, etc., found in the building.  We were able to recompile
17   as many of the documents as we could in the interim, but there
18   are more documents that I haven't -- like e-mails and whatnot
19   that I haven't had a chance to go through and review for
20   relevance and to make sure that they are discoverable and
21   whatnot.  But as plaintiff's counsel mentioned in her letter,
22   she was willing to accept these documents on a rolling basis,
23   and that's what we are trying to work towards, certainly not
24   trying to hold --
25           THE COURT:  When is the expected completion of the

1    production anticipated?

2            MS. SILVER:  Your Honor, I have about 4,000 or more
3    e-mails to go through, last time I checked, which was before
4    all this happened, and I think that I could probably have our
5    office get through it within the next two weeks.

6            THE COURT:  We are now January 31, that will take you
7    to February 14.

8            MS. SILVER:  Right.

9            THE COURT:  Okay.

10           MS. SILVER:  Regardless, I do think that the document
11   production that we have produced to date resolves most, if not
12   all, of the issues that were set forth in counsel's December
13   deficiency letter to us, and I think that letter is moot.  And
14   since we made the document production, we haven't received any
15   notice of subsequent deficiencies.  I don't know what counsel
16   is referring to at this point, what she still needs.  So that
17   would be helpful if she reached out to us.  I would certainly
18   be able to work through anything that was a proper request and
19   we had relevant information in response to.

20           THE COURT:  What's the story with the interrogatories?
21   You haven't had a discussion?

22           MS. SILVER:  Your Honor, the interrogatories were
23   referencing -- a lot of our interrogatory responses referred
24   plaintiff's counsel to the document production, and some of
25   those were called deficient obviously because we hadn't

1   produced documents yet.  So since that date we have produced
2   documents and I think most of them are moot.
3              THE COURT:  These are specific references to documents
4   by Bates numbers?
5              MS. SILVER:  No, your Honor, there is not.
6              THE COURT:  In other words, it just says "see
7   documents" unspecified.
8              MS. SILVER:  It said "documents will be produced."
9              THE COURT:  Which is not an adequate reference to
10  documents for purposes of answering interrogatories, so just so
11  we are clear about that and in anticipation of the fact that
12  you both are going to be required to talk to each other before
13  you leave here today about any deficiencies, where you are
14  seeking to incorporate into an interrogatory answer as a
15  complete response any document or documents you are required to
16  identify those documents with specificity.
17             MS. SILVER:  I understand, your Honor.
18             THE COURT:  So that will be the subject obviously.
19             MS. SILVER:  That's not --
20             THE COURT:  Supplemental responses within the same
21  two-week period.
22             MS. SILVER:  Sure.  That's not disputed.  If that's an
23  issue, we would certainly comply with it, which it clearly is
24  to your Honor.
25             The other thing is a lot of documents were requested

1    that we find to be irrelevant, such as every single grant we
2    have applied for since X date to the present.  It is completely
3    irrelevant.  Plaintiff's position was funded by one grant and
4    one grant only, and we produced the information relating to
5    that grant.  I'm not sure why the other grants need to be
6    produced as well.  It is completely irrelevant if you ask me.
7            THE COURT:  I assume you will have the opportunity to
8    discuss your objections with counsel for plaintiff before any
9    application is made to the court for a ruling.
10           MS. SILVER:  I would hope so, yes.  And the same goes
11   for the personnel files of individuals who are not directly
12   involved in this lawsuit and even the corporate individuals
13   named because --
14           THE COURT:  Again, I assume these will all be matters
15   of discussion between you and plaintiff's counsel before any
16   application is made to the court.
17           MS. SILVER:  Okay.
18           That being said, we also requested authorizations in
19   our document requests which we have not received yet.
20           THE COURT:  Authorizations for what?
21           MS. SILVER:  Various things relating to her -- any
22   emotional distress and doctor's records and whatnot.  We
23   also --
24           THE COURT:  Slow down.  That request was made when?
25           MS. SILVER:  That request was made, I believe, in

1   September.
2            THE COURT:  You have taken this up with plaintiff's
3   counsel, the lack of getting any authorizations?
4            MS. SILVER:  I have not.
5            THE COURT:  Okay.  Well, that will be another topic of
6   conversation that you will have today.
7            MS. SILVER:  Okay.
8            What we have taken up with plaintiff's counsel is she
9   mentioned at mediation is my understanding -- I wasn't there,
10  but my colleague tells me that she mentioned at mediation their
11  names of witnesses who can corroborate her client's
12  allegations.  We have yet to obtain those names.
13           THE COURT:  Have there been initial disclosures by the
14  parties?
15           MS. SILVER:  Yes.
16           THE COURT:  Which includes, I seem to recall, the
17  names of people with knowledge of the facts.
18           MS. SILVER:  From what I understand that wasn't a
19  comprehensive list.
20           That brings us to the recordings.  Your Honor, with
21  respect to the recordings, first of all, there hasn't been a
22  motion filed and there certainly has not been any good faith by
23  plaintiff.  We reached out to plaintiff's counsel, said can we
24  have these recordings before we go into mediation because they
25  could make or break the case, and obviously if we can settle at

1   this point it would be helpful.  We were told, no, we are
2   drafting a motion for a protective order.  That was in early
3   December.  We never got a motion and certainly us reaching out
4   to plaintiff and saying can we have the tapes and her
5   responding no is not a good faith effort to resolve an issue.
6           Additionally, I don't understand how good cause has
7   been established here.  If the point of withholding these
8   recordings is to impeach us at a later date based upon
9   testimony given at depositions, then how is that relevant when
10  they are saying they already have statements that say that we
11  did X, Y, and Z that the recordings dispute.
12          THE COURT:  I think what has been articulated by your
13  learned adversary is that you have statements, written
14  statements which you have not produced which you say or
15  somebody on your side says undercut the factual allegations of
16  the complaint, and they say they have asked you folks for
17  production of those documents and either there has been a
18  refusal or there has been no response.  I don't know what the
19  story is.
20          MS. SILVER:  I don't know either since those
21  conversations were, as Ms. Mesidor stated, with prior counsel,
22  not with me.
23          THE COURT:  Is this a prior counsel who has
24  disappeared from the face of the earth?
25          MS. SILVER:  I never even knew about these

d1v2johc

1    conversations until just --
2             THE COURT:  That's not my question.
3             MS. SILVER:  No, she is still available.
4             THE COURT:  She is still available.  You had
5    discussions with this prior counsel?
6             MS. SILVER:  Yes.  As far as the investigation
7    documents, I will produce anything that's not privileged.
8             THE COURT:  Okay.  Are the factual statements such as
9    they may have been going to be withheld on a claim of
10   privilege.
11            MS. SILVER:  I have to double check that, your Honor.
12   I didn't even know that was an issue.
13            THE COURT:  Why don't you get back to plaintiff's
14   counsel by the end of tomorrow --
15            MS. SILVER:  Sure.
16            THE COURT:  -- on the statements.
17            MS. SILVER:  Your Honor, may I have until Monday just
18   in case I can't reach her?
19            THE COURT:  Okay.
20            MS. SILVER:  Also, your Honor, going back to
21   withholding the recordings, there is nothing here that
22   establishes good cause.  It is pure speculation that we would
23   be tailoring our testimony.  It doesn't -- there is no reason
24   for -- counsel hasn't provided any reason to believe that we
25   would tailor our testimony otherwise.  Moreover, the Rofail

1    case, which plaintiff also cited, but it doesn't support her

2    position necessarily, states that a threat of tailoring does

3    not necessarily establish good cause, and that's our position

4    here with respect to that.

5             And that's pretty much it as far as we are concerned.

6             THE COURT:  Okay.

7             A couple of things.  First of all, to the extent that

8    the plaintiff is applying for some sort of protective order on

9    audiotapes, I am certainly not granting that at this stage.

10   There is no showing that would suggest that it is appropriate

11   to delay production of these tapes.  There doesn't seem to have

12   been any suggestion that has any particularly compelling

13   persuasiveness that there is going to be a prospect of

14   tailoring, and to the extent that the plaintiff may want to

15   make a formal motion, that motion would have to be filed by

16   close of business on Monday, if you have anything else to add,

17   otherwise I will expect the tapes will be produced in due

18   course.

19            As far as issues going to the production of documents

20   and the interrogatories, I will direct that counsel meet with

21   each other.  You can use the robing room, if you wish, to go

22   over any and all issues to.  To the extent that there are

23   documents that just haven't been reviewed by counsel because of

24   the power outage in the office, as we discussed before, those

25   are to be produced within two weeks.  Supplemental or amended

1    interrogatory answers, either by virtue of agreement by counsel

2    or by any court order, will be due within two weeks.  If you

3    cannot reach agreement on interrogatories today, make an

4    application by close of business on Monday for some sort of

5    court order on that.

6            And then for the road forward, let me just make plain

7    that it is a requirement -- it is not just me, it is the

8    federal rules and the local rules -- that before counsel seek a

9    court ruling on matters that may be in dispute governing the

10   discovery or any other pretrial matter, you are required first

11   to attempt to resolve the disagreements directly between

12   yourselves.  That obligation is not satisfied by exchanging

13   letters.  You have to talk to each other either on the phone or

14   in person, a requirement that will now be put into practice

15   when the two of you are invited to join each other in the

16   robing room.

17           Anything else at this point?

18           MS. MESIDOR:  No, your Honor.  Thank you for your

19   time.

20           MS. SILVER:  Thank you, your Honor.

21           THE COURT:  Thank you.

22                             - - -

23

24

25