**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X    **Case No. 12-CV-04460 (HB)**
BRANDI JOHNSON,

                Plaintiff,

       - against -

STRIVE EAST HARLEM EMPLOYMENT GROUP, LISA
STEIN, Individually, ROB CARMONA, *Individually*, and
PHIL WEINBERG, *Individually*,

                Defendants.

------------------------------------------------------------------------X

---

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' POST TRIAL MOTIONS

---

**PHILLIPS & ASSOCIATES, PLLC**
*ATTORNEYS FOR PLAINTIFF*
45 BROADWAY, SUITE 620
NEW YORK, NEW YORK 10006
(212) 248-7431 (TELEPHONE)
(212) 901-2107 (FACSIMILE)

# TABLE OF CONTENTS

I.     TABLE OF AUTHORITIES………………………………………………………iii

II.    PRELIMINARY STATEMENT………………………………………………………2

III.   STATEMENT OF FACTS………………………………………………………2

IV.    ARGUMENT………………………………………………………………………...3

    a.  POINT I: DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW……………………………………...…………………………3

        i.  *Jury Appropriately Found that Defendant Carmona Discriminatorily Terminated Plaintiff*...........................................................…..4

        ii. *Jury Appropriately Found that Plaintiff was Subject to a Hostile Work Environment Based on Gender Under the NYCHRL*…………………7

        iii. *Jury Appropriately Found that Plaintiff was Subject to a Hostile Work Environment Based on Race*……………………………………….10

        iv. *Jury Appropriately Found that Plaintiff was Retaliated Against*…….11

        v.  *Plaintiff is Entitled to Punitive Damages*……………………………14

    b.  POINT II:  DEFENDANTS SHOULD NOT BE GRANTED A NEW TRIAL……………….……………………………………………………..15

        i.  *The Jury's Verdict is Supported by the Clear Weight of the Evidence.*16

        ii. *The Trial Court Was Fair and/or No Substantial Evidentiary Errors Occurred*……………………………………………………………16

            a.  Any Denial of Defendants from Fully Testifying was Harmless Error………………………………………………………16

            b.  Plaintiff's Criminal Conviction………………………17

            c.  Testimony Regarding Plaintiff's Therapists…………………18

            d.  Testimony By Maria Ortiz…………………………………19

            e.  Impeachment of Plaintiff Regarding "Put this Bitch in a Smash" Comment………………………………………………..19

            f.  Preclusion of Phil Weinberg's Investigation Notes…………...19

        iii. *Jury Appropriately Awarded Compensatory and Punitive Damages*...20

   c.   POINT III: DISMISSAL IS IMPROPER FOR DISCOVERY VIOLATION.20

V.    CONCLUSION……………………………………………………………..25

**FEDERAL CASES**                                                              **PAGES**

Augustin v. Yale Club of New York City

2006 WL 2690289 (S.D.N.Y. 2006) ……………………………………………………13

Bailey v. Binyon

583 F. Supp. 923 (N.D. Ill. 1984) ……………………………………………………11

Barney v. Consolidated Edison Co. of New York

2009 WL 6551494 (E.D.N.Y. 2009) …………………………………………………12

Baron v. N.Y. City Dep't of Educ.

2009 WL 1938975 (E.D.N.Y. 2009) ……………………………………….…………5

Barrett v. Orange Cnty. Human Rights Comm'n

194 F.3d 341 (2d Cir. 1999)……………………………………………………………15

Bickerstaff v. Vassar Coll.

196 F.3d 435 (2d Cir. 1999) ………………………………………………..…….5

Brady v. Wal-Mart Stores, Inc.

455 F. Supp. 2d 157 (2006) ……………………………………..…………………22

Brown v. Baldwin Union Free Sch. Dist.

603 F. Supp. 2d 509 (E.D.N.Y. 2009)…………………………………………………6

Carlson v. Parry

2013 U.S. Dist. LEXIS 137902 (W.D.N.Y. Sept. 24, 2013)……………………………16, 17

Caruolo v. John Crane, Inc.

226 F.3d 46 (2d Cir. 2000)……………………………………………………………15

Cifra v. Gen. Elec. Co.

252 F.3d 205 (2d Cir. 2001) …………………………………………………………12

Cruz v. Local Union No. Three of the Int'l Bhd. of Elec. Workers

34 F.3d 1148 (2d Cir. 1994)……………………………………………………………3

DeNardi v. DRA Imaging, P.C.

605 F.Supp.2d 550 (S.D.N.Y. 2009)……………………………………………………4

Dependahl v. Falstaff Brewing Corp.

653 F.2d 1208 (8th Cir. 1981)……………………………………………………………24

Diesel v. Town of Lewisboro
232 F.3d 92 (2d Cir. 2000)……………………………………………………………4

DLC Mgmt. Corp. v. Town of Hyde Park
163 F.3d 124 (2d Cir. 1998)…………………………………………………..15, 16

Doye v. Colvin
378 Fed. Appx. 926 (11th Cir. 2010) …………………………………………………23

Dumas v. Union Pac. R.R.
294 F. App'x 822 (5th Cir. 2008) ……………………………………………………6

Eldaghar v. City of New York Dep't of Citywide Admin. Servs.
02 CIV. 9151KMWHBP, 2008 WL 2971467 (S.D.N.Y. July 31, 2008)……………………6

Fullard v. City of N.Y.
274 F. Supp. 2d 347 (S.D.N.Y. 2003) …………………………………………………5

Gavenda v. Orleans Cnty.
2000 U.S. Dist. LEXIS 13915, 2000 WL 1375590 (W.D.N.Y. 2000)………………………15

Harris v. Forklift Sys. Inc.
510 U.S. 17 (1993) …………………………………………………………………8

Henry v. Wyeth Pharms., Inc.
616 F.3d 134, 151 (2d Cir. 2010) *cert. denied*, 131 S. Ct. 1602 (2011)……………………16

Hill v. Citibank Corp.
312 F.Supp.2d 464 (S.D.N.Y.2004) …………………………………………………12

Hoffman v. Palmer
129 F.2d 976, 991 (2d Cir. 1942), aff'd, 318 U.S. 109 (1943)………………………………20

Holmes v. Trinity Health
2013 U.S. App. Lexis 18328 (8th Cir. 2013)…………………………………………24

In re Vivendi Universal, S.A. Sec. Litig.
765 F. Supp. 2d 512 (S.D.N.Y. Feb. 17, 2011)…………………………………………15

Jamieson v. Poughkeepsie City Sch. Dist.
195 F. Supp. 2d 457 (S.D.N.Y. 2002) …………………………………………………5

La Grande v. DeCrescente Distributing Co., Inc.

370 Fed.Appx. 206 (2d Cir. 2010) ……………………………………………………11

Lewis v. Velez

149 F.R.D. 474, 488 (S.D.N.Y. 1993)……………………………………………………20

Manley v. AmBase Corp.

337 F.3d 237 (2d Cir. 2003)……………………………………………………………15

Metzler v. Fed. Home Loan Bank of Topeka

464 F.3d 1164 (10th Cir. 2006) ………………………………………………………6

Mihalik v. Credit Agricole Cheuvreux N. America, Inc.

2013 U.S. App. LEXIS 8494, 2013 WL 1776643 (2d Cir. Apr. 26, 2013) …………………9

Moore v. City of Clarksville

2011 U.S. Dist. LEXIS 123724, 2011 WL 5117776 (M.D. Tenn. 2011)……………………17

Mugavero v. Arms Acres, Inc.

680 F. Supp. 2d 544 (S.D.N.Y. 2010)……………………………………………………15

Myplaycity, Inc. v. Conduit Ltd.

2013 U.S. Dist. LEXIS 115598 (S.D.N.Y. Aug. 12, 2013)…………………………………16

Nadel v. Isaksson

321 F.3d 266 (2d Cir. N.Y. 2003)………………………………………………………3

Notaro v. Fossil Industries, Inc.

2011 WL 5117104 (E.D.N.Y. 2011) ……………………………………………………12

Olsen v. County of Nassau,

615 F. Supp. 2d 35 (E.D.N.Y. 2009) ……………………………………………………21

Parrish v. Sollecito

258 F.Supp.2d 264 (S.D.N.Y. 2003) ……………………………………………………12

Patterson v. County of Oneida

375 F.3d 206 (2d Cir. 2004)……………………………………………………………10

Perkins v. Silver Mountain Sports Club & Spa, LLC

557 F.3d 1141 (10th Cir. 2009)…………………………………………………………17

Phillips v. Bowen

278 F.3d 103 (2d Cir. 2002) ……………………………………………………………20

Pilgrim v. McGraw-Hill Companies, Inc.

599 F.Supp.2d 462 (S.D.N.Y. 2009). ……………………………………………12, 13

Playtex Prods. v. P&G

126 Fed. Appx. 32 (2d Cir. N.Y. 2005)……………………………………………….4

Port Auth. Police Asian Jade Society of New York and New Jersey v. Port Auth. of New York and New Jersey,

681 F.Supp.2d 456 (S.D.N.Y. 2010) …………………………………………………20

Quinn v. Green Tree Credit Corp.

159 F.3d 759 (2d. Cir. 1998) …………………………………………………………13

Ramirez v. New York City Off-Track Betting Corp.,

112 F.3d 38 (2d Cir. 1997) …………………………………………………………22

Rodgers v. Western-Southern Life Ins. Co.

12 F. 3d 668 (7th Cir. 1993)…………………………………………………………11

Sadki v. Suny Coll. at Brockport

310 F. Supp.2d 506 (W.D.N.Y. 2004) …………………………………………………6

Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,

183 F.3d 155 (2d Cir. 1999) …………………………………………………………12

Scheiner v. N.Y.C. Health & Hosps.

152 F.Supp.2d 487 (S.D.N.Y.2001) …………………………………………………12

Shager v. Upjohn Co.

913 F.2d 398 (7th Cir. 1990) …………………………………………………………6

Simblest v. Maynard

427 F.2d 1 (2d Cir. 1970)……………………………………………………………3

Simmons v. Abruzzo

49 F.3d 83, 88 (2d Cir. 1995)………………………………………………………24

Terry v. Ashcroft

336 F.3d 128 (2d Cir. 2003)…………………………………………………………4

Tesser v. Bd. of Educ.

370 F.3d 314 (2d Cir. 2004)…………………………………………………………16

This Is Me, Inc. v. Taylor

157 F.3d 139 (2d Cir. 1998)………………………………………………………..3, 4

Thorsen v. County of Nassau,

2:03 CV 01022 (E.D.N.Y. 2009) ……………………………………………………………22

United States v. Sheffield

992 F.2d 1164 (11th Cir. 1993)…………………………………………………………………17

United States v. Adams

271 F.3d 1236 (10th Cir. 2001)…………………………………………………………………17

White v. City of New York

2009 U.S. Dist. LEXIS 92079, 2009 WL 3233121 (E.D.N.Y. Oct. 2, 2009)…………23, 24

White v. Department of Correctional Services

2011 WL 4527320 (S.D.N.Y. 2011) …………………………………………………………12

## STATE CASES

Albunio v. City of New York

2011 WL 1157706 (NY C.A. 2011) …………………………………………………………12

Albunio v. City of New York,

2009 WL 3644198 (N.Y.A.D. 1 Dept.) (N.Y.A.D. 1 Dept., 2009) …………..……………22

Farrugia v. North Shore University Hospital

820 N.Y.S.2d 718 (2006) …………………………………………………………………………8

Hanna v. New York Hotel Trades Council

851 N.Y.S.2d 818 (N.Y. Sup., 2007). ……………………………………………………………7

NYC Transit Auth. V. State Div. of Human Rights

181 A.D.2d 891, 581 N.Y.S.2d 426 (2d Dep't 1992) ………………………………………22

Santos v. Brookdale Hosp. Medical Center

2010 WL 3911396 (N.Y. Sup., 2010) …………………………………………………………7, 10

Sier v. Jacobs Persinger & Parker

714 N.Y.S.2d 283 (1st Dep't 2000) …………………………………………………………22

Sogg v. American Airlines, Inc.

603 N.Y.S.2d 21 (1st Dep't 1993) …………………………………………………………22

Tiffany & Co. v. Smith

638 N.Y.S.2d 454 (1st Dep't 1996) ……………………………………………………22

Town of Hempstead v. State Div. of Human Rights

649 N.Y.S.2d 942 (2d Dep't 1996) ……………………………………………………22

Williams v. New York City Housing Auth.

872 N.Y.S.2d 27 (1st Dep't 2009) ……………………………………………………9

## FEDERAL STATUTES

Fed. R. Civ. P. 41……………………………………………………………………23

Fed. R. Civ. P. 56……………………………………………………………………...3

Fed. R. Civ. P. 61……………………………………………………………………16

## LOCAL STATUTES

New York City Administrative Code § 8-107(7)…………………………………………...13

# I.    PRELIMINARY STATEMENT

Plaintiff, Brandi Johnson, by and through her attorneys Phillips & Associates submit this memorandum of law in opposition to Defendants' motion for: (a) judgment as a matter of law, pursuant to Rule 50(b); (b) a new trial on the merits pursuant to Rule 59; (c) a remittitur, or in the alternative a new trial, on damages pursuant to Rule 59; and (d) dismissal pursuant to Rule 37, to sanction Plaintiff's intentional failure to comply with Court-ordered discovery.

# II.    STATEMENT FACTS

On or about May 2010, Plaintiff Johnson began working for Defendant Strive as a National Affiliate Services Coordinator. Trial Tr. 45:14-46:7.  During her interview for the position, Plaintiff Johnson indicated that she did not want any positions that had any time limitations or were funded by a grant. Trial Tr. 47:18-25.  At the start of her employment Plaintiff Johnson's direct supervisor was Defendant Carmona. Trial Tr. 48:20-22.  Within the first 30 to 45 days of Plaintiff Johnson's employment at Strive, Defendant Carmona began his belittling and harassing behavior. Trial Tr. 49:20-25.  Plaintiff Johnson was subjected to screaming, yelling and cursing by Defendant Carmona, Trial Tr. 50:25-51:6, because of her race and gender.

One example of such animus occurred when one of Defendants' programs' past female graduates came into the office to see Plaintiff Johnson. Trial Tr. 56:2-7. The female graduate was a part of Defendants' women's group, and told Plaintiff Johnson that Angel Garrido, made sexual advances toward her. Trial Tr. 56:8-12.  Plaintiff Johnson, not knowing which steps to take, requested Defendant Carmona's guidance as to the next step. Trial Tr. 56:18-20. Both Defendant Carmona and Mr. Johnson openly grimaced and made gestures demonstrating their disinterest in Plaintiff Johnson's complaint of sexual harassment against the female graduate. Trial Tr. 56:22-23.  Defendant Carmona and Mr. Johnson's reaction was so candid that they made the female graduate and Plaintiff Johnson uncomfortable and upset. Trial Tr. 57:13. Once Defendant Stein was briefed on the sexual harassment against the female graduate, Defendant Stein stated that the situation was a "code yellow" and not a "code red." Trial Tr. 58:3-4

A few days later, Defendant Carmona approached Plaintiff Johnson, and indicated that she used poor judgment regarding the incident with the female past graduate.  Trial Tr. 58:5-6. Defendant Carmona promptly replied, that the female graduate was "ugly as shit" and that no

one could tell him that "she didn't enjoy it," and that the graduate was not Mr. Garrido's type. Trial Tr. 58:9-12.  Defendant Carmona further instructed Plaintiff Johnson to, "stop being so emotional." Trial Tr. 58:12-13.

In or about March 2012 Plaintiff Johnson began recording her interactions with Defendant Carmona to chronicle how bad her experience really was. Trial Tr. 62:2-6.  In the midst of her colleagues, Defendant Carmona indicated to Plaintiff Johnson, that "y'all two are just alike." Trial Tr. 62:11-12.  Plaintiff Johnson approached Defendant Carmona in order to receive clarification regarding a comment he had made the day before. Trial Tr. 62:19-25. In response to Plaintiff Johnson's request for clarification regarding Defendant Carmona's perception of Plaintiff Johnson, Defendant Carmona stated:  "You and her are just alike. Both of you are smart as shit, but dumb as shit. You know what it is...both of you [referencing Plaintiff Johnson and colleague Leticia Thomas] are "niggers"...Y'all act like "niggers" all the time." Defendants Exh. G

Defendant Carmona continued: "Brandi [Plaintiff Johnson], you and her [Leticia Thomas] act like "niggers" and "niggers" let their feelings rule them...I'm gonna give it to you hardcore. You and her are the same. You and her are very bright...but y'all act like "niggers"...seriously." Defendants Exh. G  In response, Plaintiff Johnson asked Defendant Carmona what he meant when he stated that Plaintiff Johnson and [Leticia Thomas] are "just alike." Defendant Carmona replied: "Because like I said, y'all are both very bright, but both of y'all act like "niggers" at inappropriate times." Defendants Exh. G Plaintiff was offended and humiliated by Defendant Carmona's discriminatory comments. Trial Tr. 65:18-24, so much so she spent 45 minutes crying in the ladies room. Trial Tr. 66:18-22.

On or about April 11, 2012, Plaintiff sent a formal complaint to Weinberg apprising him of the numerous harassing, discriminatory and retaliatory acts she had endured from Defendants. Trial Tr. 68:10-19; 472:15-16  Since making the April 2012 complaint, Defendants Carmona discriminatory and retaliatory actions has intensified. Trial Tr. 69:1-4.  Defendant Carmona sought to isolate and retaliate against Plaintiff by preventing staff and clients from communicating and/or socializing with Plaintiff. Trial Tr. 69:5-8.  Jamar Cooks, a past participant, visited Plaintiff Johnson's office. Trial Tr. 214:215-16. While Mr. Cooks was in Plaintiff Johnson's office, Defendant Carmona told Mr. Cooks, in a loud voice, that he is no longer allowed to come to Defendant Strive's office to see Plaintiff Johnson. Trial Tr. 215:4-6.

As such, Plaintiff Johnson attempted to complain about the discrimination and retaliation to Stein and Weinberg, who were both in Stein's office. Trial Tr. 349:24-350:2. However, when Plaintiff Johnson knocked on Stein's door, she realized that Defendant Carmona was also present, at which point Defendant Carmona blocked, and then slammed, the door in Plaintiff Johnson's face, wholly preventing Plaintiff Johnson from being able to make any complaint of discrimination and retaliation. Trial Tr. 72:19-20; 347:8-350:11. Stein and Weinberg did nothing and instead acquiesced in Defendant Carmona's actions. Trial Tr. 73:5-8; 350:18-19.

Defendant Strive had knowledge of and/or acquiesced in the discrimination and harassment by Defendant Carmona, as Plaintiff Johnson complained to Stein on numerous occasions regarding his behavior. Trial Tr. 60:1-15. On or about June 11, 2012, Plaintiff Johnson was terminated from her employment. Trial Tr. 487:4-6. At this juncture, Defendants for the first time, informed Plaintiff Johnson that her position funded through the "Pathways Out of Poverty Grant." Trial Tr. 47:16-25. Yet other employees, whose positions were also funded by the grant, remained intact. Trial Tr. 75:13-17.

## III. ARGUMENT

### A. <u>DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW</u>

The standard for post-verdict judgment as a matter of law is the same as for summary judgment under Fed. R. Civ. P. 56, <u>This Is Me, Inc. v. Taylor</u>, 157 F.3d 139, 142 (2d Cir. 1998), and thus "[a] district court must deny a motion for judgment as a matter of law unless, viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, **there can be but <u>one</u> conclusion as to the verdict that reasonable [persons] could have reached.**'" <u>Nadel v. Isaksson</u>, 321 F.3d 266, 272 (2d Cir. N.Y. 2003) *quoting* <u>Cruz v. Local Union No. Three of the Int'l Bhd. of Elec. Workers</u>, 34 F.3d 1148, 1154-55 (2d Cir. 1994) (*quoting* <u>Simblest v. Maynard</u>, 427 F.2d 1, 4 (2d Cir. 1970)) (second alteration in original) (emphasis added).

The Court may only grant the motion where the record demonstrates "such a complete absence of evidence supporting the verdict, that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict" against the

moving party. <u>Playtex Prods. v. P&G</u>, 126 Fed. Appx. 32 (2d Cir. N.Y. 2005) *quoting* <u>Diesel v. Town of Lewisboro</u>, 232 F.3d 92, 103 (2d Cir. 2000). (internal quotation marks omitted).

In light of the plaintiff's evidence as a whole, the Court can be satisfied that Plaintiff adduced sufficient probative evidence to support the jury's verdict that Defendants Carmona and Strive subjected Plaintiff to a hostile work environment, retaliated against her and subjected her to a discriminatory termination on the basis of her race and gender. *See* <u>This is Me, Inc. v. Taylor</u>, 157 F.3d 139, 142 (2d Cir. 1998) ("Weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that a reasonable juror would have been compelled to accept the view of the moving party." (internal citations and quotation marks omitted)). Defendants are unable to meet this burden as a whole.

1. <u>Jury Appropriately Found the Defendant Carmona Discriminatorily Terminated Plaintiff</u>

To establish a *prima facie* case of discrimination, Plaintiff must show that: (1) she belonged to a protected class, (2) was qualified for the position she held, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003). In this case, there is no doubt that Plaintiff Johnson satisfies the first three elements. Plaintiff is Black. Defendants do not dispute in their papers that Ms. Johnson was qualified for the position she held and she was subject to an adverse employment action (termination).

With respect to the last element, the circumstances surrounding Plaintiff Johnson termination were most suspicious and definitely give rise to an inference of an underlying discriminatory animus; under which the jury's could have found that she was discriminatorily terminated. *See* <u>DeNardi v. DRA Imaging, P.C.</u>, 605 F.Supp.2d 550, 555, 605 F.Supp.2d 550 (S.D.N.Y.,2009) ("The *prima facie* case raises an inference of discrimination only because it is presumed that the adverse action, if otherwise unexplained, is more likely than not based on the consideration of impermissible factors").

Defendants indicate that Ms. Johnson was terminated because the grant that funded her job had expired (Def. Mem. Of Law pg. 10). The jury determined this "nondiscriminatory reason" to be pretextual. The jury's conclusion was supported by evidence that: 1) other positions who were partially funded by the grant did not suffer in any reduction in salary (Trial Tr. 332:23-333:12); 2) a position that was substantially similar to Plaintiff's position was posted

by Defendant Strive on an employment seekers website, Indealist.com, about a month of Plaintiff's termination Tr. 355:9-356:1; 3) Defendant Carmona testified that there was "always" an Affiliates Service Coordinator position, irrespective of the Pathways Out of Poverty grant. (Trial Tr. 416:16-19).

Furthermore, when Defendants prior argument that there had never been anyone in the Affiliates Services Coordinator position before Ms. Johnson began, proved to be false, this could have harmed Defendants' credibility with the jury; especially on the issue of whether or not the position was truly created only for the purposes of this grant- thus requiring the position's elimination when the grant expired.

As it relates to Defendant Carmona's involvement/influence on Ms. Johnson's termination, Defendants' assertion that "the jury must have concluded that Carmona made the decision to terminate Plaintiff" is not supported by the record.

Defendants cannot substitute their own judgment for that of the jury, in areas of credibility and weight of the evidence, which are clearly within the purview of the jury. First, it should be noted that Ms. Johnson, Stein and Defendant Carmona all testified to Defendant Carmona's influence and power to hire, fire and discipline Plaintiff. (Trial Tr. 95:7-8; 234:2-19; 315:2-14) Further, Plaintiff testified of her belief that Defendant Carmona influenced her termination. (Trial Tr. 78:8-14). This testimony alone when corroborated by both Defendants Carmona and Stein that Defendant Carmona could and has influenced Ms. Johnson's hiring and firing[1] is sufficient of a basis to conclude that Defendant Carmona was integral in Ms. Johnson's termination.

Under the "cat's paw" theory of liability, "'the impermissible bias of a single individual can infect the entire group of collective decision makers,' at least when the decision makers are overly deferential to the biased individual's recommendations." Baron v. N.Y. City Dep't of Educ., No. 06-CV-2816 (FB)(MDG), 2009 WL 1938975, at *6 (E.D.N.Y. 2009) (citing Fullard v. City of N.Y., 274 F. Supp. 2d 347, 357 (S.D.N.Y. 2003) and quoting Jamieson v. Poughkeepsie City Sch. Dist., 195 F. Supp. 2d 457, 474 (S.D.N.Y. 2002)); see Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999) ("We recognize that the impermissible bias of a single individual **at any stage** of the promoting process may taint the ultimate employment

---

[1] Ms. Stein testified extensively about "considering" whether to terminate Plaintiff and indicating that it was Mr. Carmona who "saved" Ms. Johnson's job. (Trial Tr. 315:5-14). If such an influence is to be believed, than the converse can be true as well that he could have influence to have her terminated as well.

decision in violation of [§1981]. This is true even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the promotion process." (internal citation omitted) (emphasis added)); *see also* <u>Dumas v. Union Pac. R.R.</u>, 294 F. App'x 822, 826 (5th Cir. 2008) ("[A] plaintiff can make out a prima facie case by showing that other employees, with discriminatory motives, had influence or leverage over the official decisionmaker." (citation and internal quotation omitted)); <u>Metzler v. Fed. Home Loan Bank of Topeka</u>, 464 F.3d 1164, 1179 n.7 (10th Cir. 2006) ("[I]n certain circumstances, an employer can be held liable for a subordinate employee's prejudice even if the decision-maker lacked the required intent where the decision-maker failed to independently investigate the subordinate's complaint against the former employee and instead merely followed the biased recommendation of the subordinate."); <u>Shager v. Upjohn Co.</u>, 913 F.2d 398, 405 (7th Cir. 1990) ("[If the committee] acted as the conduit of a [supervisor's] prejudice—his cat's paw—the innocence of its members would not spare the company from liability."); <u>Sadki v. Suny Coll. at Brockport</u>, 310 F. Supp.2d 506, 515 n.5 (W.D.N.Y. 2004) (endorsing the *cat's paw theory* of employer liability for discrimination and noting that "[c]ertainly it would not be surprising if a university president gives great deference to a dean's recommendations for faculty positions, and the manner in which [the president] endorsed [the dean's] recommendation—'I agree with your analysis. PY'—suggests that [the president] did so here.").

Indeed, Ms. Stein testified that she relied on Mr. Carmona's recommendation in not "terminating" Plaintiff and to give her another chance in late 2011/early 2012. (Trial Tr. 315:5-14). All the individual Defendants testified to Defendant Carmona's influence in the hiring, firing and discipline of Ms. Johnson. Thus, a reasonable jury could find that Mr. Carmona's discriminatory bias toward plaintiff more likely than not infected the decision-making process that ultimately resulted in plaintiff's termination.[2] A decision making process, that Defendants admit that he played a substantial role in before.[3] (Trial Tr. 95:7-8; 234:2-19; 315:2-14)

---

[2] Defendants casually allude in their papers to a "same actor" theory as an affirmative defense. The same actor defense merely provides a presumption in discrimination cases, one that may be overcome with evidence of discriminatory conduct, such as the use of racial epitaphs in reference to Plaintiff. This defense is "but one factor for a district court to consider in assessing whether a Title VII plaintiff's evidence is sufficient to establish an inference of discrimination." <u>Brown v. Baldwin Union Free Sch. Dist.</u>, 603 F. Supp. 2d 509, 516-17 (E.D.N.Y. 2009). Even when faced with this principle, courts have found that Plaintiff's evidence overcomes this presumption. *See* <u>Eldaghar v. City of New York Dep't of Citywide Admin. Servs.</u>, 02 CIV. 9151KMWHBP, 2008 WL 2971467 (S.D.N.Y. July 31, 2008) (finding the same actor defense inapplicable when the hiring parties were not initially aware of plaintiff's national origin). In fact,

Defendants have not cited to any portion of the record that supports their argument that "the uncontested evidence revealed Carmona was entire removed from [Plaintiff's termination] process". (*See* Def. Mem. Of Law pg. 11 n.18) Thus, a jury could have reasonably concluded that the underlying reason for plaintiff's termination from Strive was due to Defendant Carmona's influence.

2. Jury Appropriately Found that Plaintiff was Subject to a Hostile Work Environment Based on Gender Under the NYCHRL

In order to state a claim for hostile work environment under the NYCHRL, Plaintiff must allege that, a) she is a member of a protected class, b) the conduct or words upon which the claim of harassment is predicated were unwelcome, and c) the conduct or words created a hostile work environment which affected a term, condition or privilege of the employment. Santos v. Brookdale Hosp. Medical Center, 2010 WL 3911396, 2 (N.Y. Sup., 2010). "Courts use a totality of the circumstances' approach for determining whether a plaintiff's work environment is sufficiently hostile to support a hostile work environment claim." Hanna v. New York Hotel Trades Council, 18 Misc.3d 436, 443-444, 851 N.Y.S.2d 818, 826 (N.Y. Sup., 2007).

It is clear that Ms. Johnson is a woman and as such is a member of protected class. (Trial Tr. 96:9-17). It is also undisputed that discriminatory comments and actions that Defendant Carmona made against her were unwelcome. (Trial Tr. 65:20-21). Finally, the record has many examples of how Defendant Carmona's behavior and treatment of Ms. Johnson affected the terms, conditions or privileges of her employment. (Trial Tr. 66:14-24; 69:5-8; 72:13-23).

Both Plaintiff and Ms. Maria Ortiz testified substantially regarding the numerous discriminatory comments made by Defendant Carmona specific to gender. Plaintiff testified to being berated and spoken down to on the basis of her gender as the "normal" fashion that Defendant Carmona spoke to her. (Trial Tr. 59:13-16) Defendant Carmona would tell Ms. Johnson, "stop walking around here with your fucking head down", "do your fucking job", "if I

---

weighing the same actor principle against a plaintiff's evidence of discrimination may even fall within the purview of the trier of fact. *See* Brown v. Baldwin Union Free Sch. Dist., 603 F. Supp. 2d 509, 516-17 (E.D.N.Y. 2009).

[3] It should be noted that the same actor theory was not an affirmative defense advanced by Defendants nor was it a theory upon which the jury was instructed. Furthermore, the Court should reject any argument made by Defendants that Defendant Carmona was "removed" from the process because he was the subject of the complaint since no evidence of this was proffered to the jury and subject of Plaintiff's complaints included Defendant Weinberg as well.

wanted my fucking door closed, I would have fucking closed it myself". (Trial Tr. 51:24-52:2; 60:8-9). While Defendants will have you believe that these purported "facially-neutral" comments do not rise to discrimination, they do when these types of statements were not made to male employees who were not former participants. (Trial Tr. 171:3-14; 172:9-14; 188:13-17). Ms. Johnson gave some examples of types of comments and situations that made her work environment intolerable. Ms. Ortiz corroborated this intolerable environment, admitting that her interactions with Defendant Carmona were not as bad as that of Plaintiff; but nonetheless, actually credited the "hostile work environment" created by Defendant Carmona as her reason for leaving Strive and taking a $10,000 pay cut. (Trial Tr. 167:13-16).

"Although under the Federal and New York State counterparts, plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, *see, e.g.* Harris v. Forklift Sys. Inc, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); **under the City's law, liability should be determined by the existence of unequal treatment and questions of severity and frequency reserved for consideration of damages.**" Farrugia v. North Shore Hospital, 820 N.Y.S.2d 718 (2006) (emphasis added).

Plaintiff also gave specific examples in which women were not being taken seriously; i.e. former participant, Precious Tidwell's complaint regarding sexual harassment was deemed insignificant by Defendant Carmona. (Trial Tr. 58:5-13). Ms. Johnson testified that Defendant Carmona further articulated disinterest in the participant's complaint by indicating that Ms. Tidwell was "ugly as shit" and that she probably "wanted it". (Trial Tr. 58:5-13). Moreover, Ms. Ortiz testified to the disparate ways in which Defendant Carmona treated males versus female participants- calling for the termination of a female participant that failed to say good morning, while fighting to keep a male participant who told Carmona to "suck his dick." (Trial Tr. 171:3-14; 172:9-14). Defendant Carmona's disdain for women was further evidenced by the degrading manner in which he spoke to them and requiring women to revere him and his position. To wit, in addition to wanting to terminate the otherwise well-performing female participant for failing to say hello to him, Defendant Carmona assigned Ms. Ortiz a supervisor after she correctly maintained that the "5-minute" video portion of a workshop should be closed to the public; against Defendant Carmona's insistence. (Trial Tr. 174:11-175:12).

Plaintiff testified to specific unwelcomed gender-related comments such as being told, "you're the type of woman to throw a man under the bus", "you black females get in your own way" and "you're too emotional". (Trial Tr. 50:8-9; 421:12-423:7; 418:11). Ms. Johnson also testified to Defendant Carmona walking by her desk stating, "I'm about to put this bitch in a smash", in reference to her. (Trial Tr. 72:21-23). She testified to being subject to these types of comments regularly. (Trial Tr. 59:13-16) While both Ms. Johnson and Ms. Ortiz testified to Defendant Carmona to being a yeller—both testified clearly that as women they were treated even worse, at least in part, by virtue of their gender. (Trial Tr. 49:23-50:1; 50:25-51:6 171:3-14; 172:9-14; 188:13-17). *See*, <u>Mihalik v. Credit Agricole Cheuvreux N. America</u>, Inc., F.3d , 2013 U.S. App. LEXIS 8494, 2013 WL 1776643, at *6 (2d Cir. Apr. 26, 2013) *quoting* <u>Williams v. New York City Housing Auth.</u>, 872 N.Y.S.2d 27, 39, 40 n.27 (1st Dep't 2009) ("[i]t is not enough that a plaintiff has an overbearing or obnoxious boss. She must show that she has been treated less well at least in part 'because of her gender.").

Both women testified to Defendant Carmona using his physical stature and loud booming voice to bullying them and that Defendant Carmona would belittle and degrade female employees and not male employees. (Trial Tr. 49:23-50:1; 50:25-51:6 171:3-14; 172:9-14; 188:13-17; 129:23-25). Again, Ms. Johnson testified to this occurring on a frequent basis. Ms. Johnson and Ms. Ortiz testified to keeping their "head low" in fear of Defendant Carmona because of the discriminatory comments and actions that he would take against them. (Trial Tr. 51:7-10; 51:18-52:2; 177:7; 177:20) Finally, even Defendant Carmona admitted to being a male chauvinist and having a tendency to feel that "the man rules his house… my word is law… your too emotional and I'm not"; an attitude he credits to being part of his Puerto Rican heritage. (Trial Tr. 417:4-418:13). The way Defendant Carmona exhibited this "tendency" toward male chauvinistic characteristics was corroborated by the testimony of both Ms. Johnson and Ortiz; and was believed by the jury to be neither "petty", nor "trivial" in rendering its verdict.

When the jury looked at the totality of the circumstances, a jury could come to an alternate conclusion other than what Defendants assert. In so doing, Defendants assertion that Plaintiff has not substantiated a gender based hostile work environment claim must be disregarded.

Where reasonable jurors could disagree as to whether incidents of . . . insensitivity or harassment would have adversely altered the working conditions of a reasonable employee, the

issue may not properly be decided as a matter of law. <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 227 (2d Cir. 2004).

3. <u>Jury Appropriately Found that Plaintiff was Subject to a Hostile Work Environment Based on Race</u>

The standard for proving a hostile work environment based on race is the same as gender under the New York City Human Rights Law. *See*, *supra*, <u>Santos v. Brookdale Hosp. Medical Center</u>, 2010 WL 3911396, 2 (N.Y. Sup., 2010). Again, it is undisputed that Ms. Johnson is African American and that Defendant Carmona calling her a "nigger" was a comment that she did not welcome.

In further support of its motion, Defendants argue that context of Defendant Carmona calling Ms. Johnson a "nigger" was under the backdrop that Ms. Johnson "was smart but acted like [a] 'knucklehead[]' sometimes'. Def. Mem. Of Law pg. 13. Curiously, while Defendant Carmona called Ms. Johnson a nigger eight times, he only called her a knucklehead <u>once</u>. (Def. Exh. G)

Moreover, Defendants attempt to reinvent the record by erroneously indicating that Ms. Johnson was offended by being compared to Ms. Thomas and not being called a "nigger". (Def. Mem. Of Law, pg. 13) (Trial Tr. 428:6-23). Plaintiff Johnson clearly testified on how offended she was at being called a "nigger" and how it made her feel. (Trial Tr. 65:20-21). Defendants' interpretation of what Plaintiff meant when she said "I am really offended by that. *I don't think that I do*" is not only contradicted by Plaintiff's testimony regarding same but, is so ambiguous on its face; as it could have just as easily be in reference to Ms. Thomas or to being called a "nigger". Such an ambiguity could not have required the jury to arrive at Defendants' "one conclusion".

It is clear from the record, that Defendant Carmona call Ms. Johnson a nigger eight times in that conversation. (Def. Exh. G) In addition, Mr. Carmona admitted to referring to Ms. Johnson and Ms. Leticia Thomas as "niggers" in prior conversation with Ms. Thomas and other employees. (Trial Tr. 398:3-10). In addition, Mr. Carmona is credited as making various comments about "black women" and their tendencies to "get in the way of themselves" and other similar comments throughout Ms. Johnson's employ.

Far more than offensive banter and urban slang, the word "nigger" is pure anathema to African-Americans. "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." La Grande v. DeCrescente Distributing Co., Inc., 370 Fed.Appx. 206, 210, 2010 WL 1049320, 3 (2d Cir. 2010) (*quoting* Rodgers v. Western-Southern Life Ins. Co., 12 F. 3d 668, 675 (7th Cir. 1993)) (*quoting* Bailey v. Binyon, 583 F. Supp. 923, 927 (N.D. Ill. 1984)) ("The use of the word 'nigger' automatically separates the person addressed from every non-black person; this is discrimination per se."). The analysis done by the Second Circuit in LaGrande, provides persuasive support to the jury's finding that Defendant Carmona's use of the term "nigger" in reference to Plaintiff created a hostile work environment under the New York City Human Rights law.

In addition, Defendants' argument that Plaintiff had no issue with the word "nigger" is patently false. Plaintiff specifically testified that she never used the word nigger in the office. (Trial Tr. 148:14-22). She specifically indicated that the word "nigger was not "her" word. (Trial Tr. 148:14-22). As such, Defendants' attempt to argue otherwise is without merit. Moreover, even if the jury believed Defendants own witnesses, they testified that Ms. Johnson never used the word in the work context. (Trial Tr. 235:14-18).

Defendants' insistence that Defendant Carmona's tirade was a "petty slight" or "trivial inconvenience" is absurd. Plaintiff sat with Defendant Carmona for four minutes during which he called her a "nigger" eight times, told her that she was "dumb as shit"- another characteristic that can be attributed to a "nigger" purportedly is—"allow[ing] their emotion to rule them". In addition, Defendant Carmona admitted to calling Ms. Johnson a nigger on at least one other occasion besides this one. (CITE) As such any argument, that Ms. Johnson's harassment on the basis of race claim should be dismissed is contrary to the weight of the evidence.

4. Jury Appropriately Found that Plaintiff was Retaliated Against

Also disturbing is that Defendants seem to have terminated Plaintiff Johnson employment in retaliation for complaining of race-based discrimination, in violation of NYCHRL and §1981.

To prevail on a claim of retaliation, "a plaintiff must show: 1) she engaged in a protected activity; 2) h[er] employer was aware of that activity; 3) she suffered an action that would be reasonably likely to deter a person from engaging in a protected activity; and 4) that there was a

causal connection between the protected activity and the action." <u>Pilgrim v. McGraw-Hill Companies, Inc.</u>, 599 F.Supp.2d 462, 469 (S.D.N.Y. 2009).

Furthermore, a plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not found to be unlawful, so long as plaintiff demonstrates that she possessed a good faith, reasonable belief that the underlying conduct was unlawful. *See* <u>Sarno v. Douglas Elliman-Gibbons & Ives, Inc.</u>, 183 F.3d 155, 159 (2d Cir. 1999). Section 1981 is violated when a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause. <u>Notaro v. Fossil Industries</u>, Inc., 2011 WL 5117104 (E.D.N.Y., 2011).

For purposes of a retaliation claim, "opposition" to discrimination, which need not rise to level of formal complaint in order to receive statutory protection, includes activities such as making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges. <u>Barney v. Consolidated Edison Co. of New York</u>, 2009 WL 6551494 (E.D.N.Y., 2009). *See also* <u>Albunio v. City of New York</u>, 2011 WL 1157706 (2011) (New York Court of Appeals upheld a jury's verdict in favor of two New York City police officers that claimed they were subject to retaliation for opposing discrimination against a third officer on the basis of that third officer's perceived sexual orientation).

Courts have found that a close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse action is alone sufficient to establish causation, even without direct evidence in support. *See* <u>White v. Department of Correctional Services</u>, 2011 WL 4527320, 10 (S.D.N.Y.,2011)("a causal connection may be established … by showing that the protected activity was followed closely in time by the adverse action or by other circumstantial evidence."); <u>Cifra v. Gen. Elec. Co.</u>, 252 F.3d 205, 217 (2d Cir. 2001); <u>Hill v. Citibank Corp.</u>, 312 F.Supp.2d 464, 480 (S.D.N.Y.2004)(the passage of approximately <u>one month</u> between the protected activity and the retaliation is a sufficiently short period of time for a reasonable jury to determine that the two events were causally connected); <u>Parrish v. Sollecito</u>, 258 F.Supp.2d 264, 269 (S.D.N.Y. 2003)(a rational jury could find a sufficient causal connection between protected activity and termination which was two to <u>three months</u> later); <u>Scheiner v. N.Y.C. Health & Hosps.</u>, 152 F.Supp.2d 487, 497 (S.D.N.Y.2001) (temporal proximity of <u>one month</u> between protected activity and adverse action supported allegation of

causal connection sufficient to survive summary judgment); <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 769 (2d. Cir. 1998) (<u>two months</u> between protected activity and allegedly adverse action sufficient to establish causation). Here, Plaintiff was terminated two months after her written complaint of discrimination and on the same day that Defendants were served with her lawsuit. (Trial Tr. 354:7-14) Defendants do not and cannot dispute this.

Once again, "the standards applied to retaliation claims under the [NYCHRL] seem to differ from federal law in at least one respect. Namely, unlike the federal standard, the retaliation complained of need not result in a materially adverse change in the terms and conditions of employment provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." <u>Augustin v. Yale Club of New York City</u>, 2006 WL 2690289, 29 (S.D.N.Y. 2006) (internal citations omitted); *See* <u>New York City Administrative Code § 8–107(7)</u> ("[t]he retaliation or discrimination complained of under this subdivision *need not result in an ultimate action with respect to employment* . . . or in *a materially adverse change in the terms and conditions of employment* . . . provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity"(emphasis added)); *See also* <u>Pilgrim</u> at 469 ("The *prima facie* standard for retaliation claims under the [NYCHRL] is different, in that there is no the requirement that the employee suffer a materially adverse action. Instead, the [NYCHRL] makes clear that it is illegal for an employer to retaliate in "any manner.").

Here, Plaintiff Johnson was terminated without any warning after complaining of widespread unlawful race-based and gender based discrimination. Throughout the trial, we heard evidence of the days leading up to Plaintiff's termination during which Defendant Carmona attempted to isolate and alienate her from her co-workers by telling them to not allow themselves to be used (Trial Tr. 69:5-8), isolate her from participants by telling them that Ms. Johnson had lawsuit with Strive and they should not get involved with it (Trial Tr. 215:11-16), slammed the door in Ms. Johnson's face (Trial Tr. 72:19-20) and threatened her (Trial Tr. 72:21-23). Under the New York City Human Rights Law, each of the incidents collectively taken would deter any reasonable employee from complaining of discrimination.

Defendants spend a considerable amount of time explaining why Defendant Carmona thought it necessary to tell Ms. Johnson and her co-workers to "wrap it up" but, do not offer any

reason why he told Cammie Crawford and Lynette Hall to "not allow [themselves] to be used" by Ms. Johnson. (Trial Tr. 71:11-13). It is undisputed that this "warning" came after Defendant Carmona learned of Ms. Johnson's complaint. (Trial Tr. 68:22-69:8).

Moreover, Defendant Carmona did not tell Mr. Cooks not to come to see Ms. Johnson for services. He told Mr. Cooks not to come see Ms. Johnson period. (Trial Tr. 215:11-16). He then indicated that his reason for prohibiting Mr. Cooks from seeing Ms. Johnson was due to her lawsuit. (Trial Tr. 215:11-16). It should also be noted, that the record is void of any evidence that prior to Ms. Johnson's complaint that participants had been instructed not to visit Ms. Johnson.

Defendants' comparison of Ms. Crawford's complaint that Defendant Carmona slams doors to Ms. Johnson's complaint that Defendant Carmona slammed the door in her office is disproportional. Hearing a door slam from across the room is clearly different than having one slammed in your office when you are attempting to enter a room. Moreover, Defendants' argument that Plaintiff failed to establish a connection between the door slamming incident to her complaint is incorrect. In fact, Plaintiff testified that she was attempting to complain to Weinberg about Defendant Carmona's retaliatory conduct vis-à-vis Mr. Cooks, when Defendant Carmona slammed the door preventing her from doing so. (Trial Tr. 72:19-20).

Finally as it relates to the threatening comment that Defendant Carmona made about putting "this bitch in a smash", Defendants' argument that Ms. Johnson could not prove that this comment was made in reference to her is incorrect. Plaintiff testified that she believed that this statement was made in regards to her because of the proximity to her in which Defendant Carmona said it and that he was speaking in her direction. (Trial Tr. 72:21-23). Furthermore, Defendants have testified to nothing more than the comment was never made. Since these issues of fact, can be inferred to have been resolved in favor of Plaintiff for the purpose of this motion, it is reasonable that jury could find that the accumulation of these events in a span of four days was sufficiently complaint-deterring as to constitute retaliation.

5. Plaintiff is Entitled to Punitive Damages

The record was clear that Defendants Strive and Carmona were aware that racial epithets, like "nigger" were specifically prohibited by Strive's own policies and procedures. (Trial Tr. 85:5-17). It is undisputed that Defendant Carmona meant to call Ms. Johnson a "nigger" and that he was unapologetic for doing so. (Trial Tr. 451:18-22). It is also clear that

Defendant Carmona (and therefore Strive) was aware that the use of word "nigger" could be deemed discriminatory, in that he attempted to cover his "tracks" by stating to Ms. Johnson "and I'm not saying- using the term 'nigger' derogatory" (Trial Tr. 127:12-14).Yet, he called her a nigger eight times anyway. Defendant Carmona speaks at length about he a tendency toward "male chauvinism", "the man rules his house… my word is law… your too emotional and I'm not" and that he knew that those feelings that he had about women "weren't right". (Trial Tr. 417:4-418:13).  All of which, when view in the light most favorable to the Plaintiff, would support a finding that Defendant Carmona acted with malice or with reckless indifference to Ms. Johnson's protected rights.

### B.  DEFENDANTS SHOULD NOT BE GRANTED A NEW TRIAL

It is well-established that a trial court has considerable discretion in determining whether to admit or exclude evidence." Gavenda v. Orleans Cnty., 2000 U.S. Dist. LEXIS 13915, 2000 WL 1375590, *7 (W.D.N.Y. 2000) (citing Barrett v. Orange Cnty. Human Rights Comm'n, 194 F.3d 341, 346 (2d Cir. 1999)). "In order for the Court 'to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . [that] the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence.'" Mugavero v. Arms Acres, Inc., 680 F. Supp. 2d 544, 558 (S.D.N.Y. 2010) (quoting Manley v. AmBase Corp., 337 F.3d 237, 245 (2d Cir. 2003)). The Court might also order a new trial if it finds that the trial was "unfair to the moving party [in that] substantial errors were made in admitting or excluding evidence, or in charging the jury, or [that] misconduct by counsel during the course of the trial cause[d] unfair prejudice to the moving party." In re Vivendi Universal, S.A. Sec. Litig., 765 F. Supp. 2d 512, 2011 U.S. Dist. LEXIS 17514, 2011 WL 590915, at *48 (S.D.N.Y. Feb. 17, 2011) (collecting cases). While it is true that "[t]he Rule 59 standard is less stringent than the Rule 50 standard for judgment as a matter of law", "[i]n weighing the evidence, however, the Court should not ordinarily ignore the jury's role in resolving factual disputes and assessing witness credibility." Mugavero, 680 F. Supp. 2d at 558-59 (internal quotation marks omitted).

Specifically, a district court may grant a new trial even where "there is substantial evidence to support the jury's verdict" if the court is convinced that the verdict was **manifestly erroneous**. Caruolo v. John Crane, Inc., 226 F.3d 46, 54 (2d Cir. 2000)(emphasis added); DLC

Mgmt. Corp. v. Town of Hyde Park, 163 F.3d at 133. Nonetheless, a trial judge should only grant such a motion when the jury's verdict is "egregious," such that enforcement of the judgment would constitute a miscarriage of justice. Myplaycity, Inc. v. Conduit Ltd., 2013 U.S. Dist. LEXIS 115598 (S.D.N.Y. Aug. 12, 2013) *quoting* DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998).

    1.  The Jury's Verdict is Supported by the Clear Weight of the Evidence

As discussed more fully *supra*, the record has ample evidence of Defendants' discriminatory, harassing and retaliatory conduct against Plaintiff Johnson on the basis of her gender and her race. The jury's findings regarding same do not even begin to approach the "egregious" or "seriously erroneous result" standard required to allow the granting of a new trial on this basis.

    2.  The Trial Court Was Fair and/or No Substantial Evidentiary Errors Occurred

Defendants seek a new trial on the basis that this Court made substantial evidentiary errors. "Unless justice requires otherwise, no error in . . . excluding evidence . . . is ground for granting a new trial. . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. "Whether an evidentiary error implicates a substantial right depends on the likelihood that the error affected the outcome of the case." Tesser v. Bd. of Educ., 370 F.3d 314, 319 (2d Cir. 2004) (internal quotation marks omitted). The moving party has the burden of showing that "it is likely that in some material respect the factfinder's judgment was swayed by the error." Id.

    a.  Any Denial of Defendants from Fully Testifying was Harmless Error

Defendants were given a full and fair opportunity to elicit testimony that supported their defenses. Notwithstanding same, under Rule 103 of the Federal Rules of Evidence in order to preserve a claim of error resulting from a court's exclusion of evidence during a trial, a party must "inform[] the court of [the] substance [of the evidence] by an offer of proof, unless the substance was apparent from the context." Fed. R. Evid. 103(a)(2). "[A]n offer of proof is not an absolute prerequisite in every appeal from the exclusion of evidence." *See* Henry v. Wyeth Pharms., Inc., 616 F.3d 134, 151 (2d Cir. 2010) (internal quotation omitted), *cert. denied*, 131 S. Ct. 1602, 179 L. Ed. 2d 516 (2011). Rather, "[t]he purpose of th[e] requirement is to alert the [trial] court and opposing counsel to the thrust of the excluded evidence, enabling them to take appropriate action, and to construct a record appropriate for appellate review." Carlson v. Parry,

2013 U.S. Dist. LEXIS 137902, 20-21 (W.D.N.Y. Sept. 24, 2013) *quoting* <u>United States v. Sheffield</u>, 992 F.2d 1164, 1169 (11th Cir. 1993) (internal quotation omitted).

Moreover, "merely telling the court the content of . . . proposed testimony is not an offer of proof[;] . . . [i]nstead, the proponent must describe the evidence and what it tends to show and . . . identify the grounds for admitting the evidence." <u>Carlson v. Parry,</u> 2013 U.S. Dist. LEXIS 137902, *21 (W.D.N.Y. Sept. 24, 2013) *quoting* <u>Perkins v. Silver Mountain Sports Club & Spa,</u> LLC, 557 F.3d 1141, 1147 (10th Cir. 2009) (internal quotations and citations omitted); <u>United States v. Adams</u>, 271 F.3d 1236, 1241-42 (10th Cir. 2001) ("[a]n offer of proof of testimony by counsel is the least favored method because of its potential to fall short of the standard required by the rules .. [;] [s]pecificity and detail are the hallmarks of a good offer of proof" and an offer of proof should provide both "the significance of the proposed evidence" and the grounds for its admissibility), *cert. denied*, 535 U.S. 978, 122 S. Ct. 1454, 152 L. Ed. 2d 395 (2002); <u>Moore v. City of Clarksville</u>, 2011 U.S. Dist. LEXIS 123724, 2011 WL 5117776, *9 (M.D. Tenn. 2011) ("it was clear what the proposed witnesses would allegedly testify to in light of the repeated and extended discussion about the proposed testimony throughout the trial[;] . . . an offer of proof can take the form of a summary") Defendants have not argued nor pointed to anywhere in the record to show that they preserved their claim of error resulting from the exclusion of Defendants' testimony by giving the Court and Plaintiff an offer of proof.

Moreover the portions of the record in which Defendants attest that Defendants were prohibited from "fully testifying" specifically deal with issues of Weinberg and Stein's conduct for which the jury found for Defendants. As such, any error did not interfere with Defendants substantial rights in that both those Defendants were dismissed from the case. For the reasons discussed *supra*, the claimed error does not warrant a new trial.

b. <u>Plaintiff's Criminal Conviction</u>

The Court appropriately found that Plaintiff's conviction should not be properly before the jury. The conviction is over 13 years old and would not in any way assist the jury in determining whether a hostile environment existed and whether defendants are liable for that environment.

Defendants improperly seek to argue that somehow because Plaintiff had one conviction (although never serving any jail time), that this was the reason Defendant Carmona was purportedly so harsh on her. However, the record proves the contrary. The "tough love"

attitudinal approach at Strive was first introduced to the jury within the context of Strive's program in assisting its participants with assimilating into a work culture. Tr. 261:13-262:8. Specifically, Ms. Stein indicates that "[t]hese sorts of behaviors may not necessarily have within role modeled or taught to a lot of the folks coming to our program and it is an important basis from which to launch a lot of other training and support." When asked if this "tough love" carried over into how Strive employees interact, Ms. Stein awkwardly responded, "[a] big piece of the culture at Strive is keeping it real. There is a significant percentage of the staff who themselves graduated from the program. It's really important in the work that we were doing to have that mix..." Tr. 263:1-12. Again, even in the context of employees, it is limited to those who were *former participants*, i.e. those who were formally incarcerated.

Defendant Strive has a "tough love" approach with their participants who are the community of those who were formerly incarcerated because the jail culture does not teach or foster the qualities and characteristics needed for the work culture. Strive serves as a bridge between the former jail culture of its participants and the work culture. No such bridge was needed for Ms. Johnson. She had a criminal conviction, but she had never been in jail and by the time she was hired by Strive, her conviction was about 10 years old and she was getting her Bachelor's degree—having since gotten her Masters. (Trial Tr. 45:7) Clearly she did not exhibit nor necessitate the need for the "tough love" approach Strive used in their programs. As such, telling the jury of Ms. Johnson's incarceration would not likely have swayed or persuaded them that Defendant Carmona's calling Ms. Johnson a "nigger" or "dumb as shit" as being necessitated in the spirit of "tough love"

c. Testimony Regarding Plaintiff's Therapists

The Court's ruling allowing Plaintiff the ability to testify regarding her medical treatment was appropriate under the law. As discussed fully in Plaintiff's opposition to Defendants' motion to preclude her treating physicians' testimony, annexed hereto as Exhibit B and incorporated here by reference, Defendants had ample opportunity to obtain Plaintiff's treating physician's records. Aside from the fact that Plaintiff indicated that she had treating physicians at the initial discovery hearing, Defendants were put on notice when Plaintiff responded to discovery that Plaintiff was receiving treatment. In response to Defendants' overly broad request for medical records, Plaintiff objected to the scope of Defendants' request. See, Mesidor Decl. Exhibit B. Defendants never responded with an updated or narrowed request.

Even paragraph 62 of Plaintiff's Amended Complaint indicates that Ms. Johnson "sought medical treatment from her emotional distress." Mesidor Decl., Exhibit C. Moreover, even after learning the names of Plaintiff's medical doctors back in May 2013, Defendants never made a single attempt to seek authorizations or subpoenas for information regarding same.

Defendants cannot now be rewarded by precluding Plaintiff to testify regarding treatment that they were on notice of since the service of the complaint.

d. <u>Testimony By Maria Ortiz</u>

Defendants' objection to Ms. Ortiz's testimony was as to relevance, in response to a question in which Plaintiff's counsel was eliciting testimony regarding a conversation that Ms. Ortiz had with Defendant Carmona about a female participant. Tr. 169:12-172:14. This testimony was certainly relevant in that it demonstrated the way that Defendant Carmona treated Ms. Ortiz, a female employee and how he treated men in comparison to women overall; which was a material fact at issue in this matter. Defendants argument seem to relate to the weight that the jury would give Ms. Ortiz's testimony, however, again the weight given to testimony is within the clear purview of the jury.

e. <u>Impeachment of Plaintiff Regarding "Put this Bitch in a Smash" Comment</u>

Any error that the Court may have made in denying Defendants' request to use Defendants' Exhibit J for the purposes of impeachment is harmless error. Defendants fail to identify which if any of Plaintiff's claims would have dispositively decided in the alternative had this impeachment taken place. The incident described by Plaintiff's testimony, sought to paint the picture of the environment at work after Plaintiff launched her discrimination complaint. Moreover, Plaintiff had sufficient incidents of retaliation by Defendant Carmona to show that his behavior toward Ms. Johnson was complaint deterring. Therefore, even if the jury had decided that this incident had occurred differently than Plaintiff testified, it would not have been fatal to her claims.

f. <u>Preclusion of Phil Weinberg's Investigation Notes</u>

The Court's preclusion of Phil Weinberg investigation notes was proper.

Memoranda or reports prepared after an incident have been held inadmissible where the preparer of the report knows at the time of making the report that he or she is "very likely, in a probable law suit relating to that [incident], to be charged with wrongdoing as a participant in the [incident], so that he is almost certain, when making the memorandum or report, to be

sharply affected by a desire to exculpate himself and to relieve himself or his employer of liability." Lewis v. Velez, 149 F.R.D. 474, 488 (S.D.N.Y. 1993) *quoting* Hoffman v. Palmer, 129 F.2d 976, 991 (2d Cir. 1942), aff'd, 318 U.S. 109, 87 L. Ed. 645, 63 S. Ct. 477 (1943). In the case at bar, Defendants had already been served with a draft complaint of Ms. Johnson's intention to sue at the time Weinberg began his investigation. (Trial Tr. 473:7-25). As such, Weinberg, the author of the investigative report and notes would sharply be affected by a desire to relieve himself or Strive of wrongdoing.

Even assuming *arguendo*, that preclusion was an error it was a harmless error. The jury ultimately found that neither Weinberg nor Stein had discriminated or retaliated against Plaintiff. As such, whatever the jury missed from Weinberg's notes not being admitted into evidence, they ultimately found that his actions were not culpable and therefore this omission had no substantial effect on the jury's determination.

3. Jury Appropriately Awarded Compensatory and Punitive Damages

Defendants' self-serving calculation of damages fails in many respects to consider the current state of the law. Primarily, Plaintiff was unemployed for seven months and lost $38,000 to the verdict date. (Trial Tr. 80:23-81:12). When she began working, she got a lower paying job and had lost an additional $5,800.00 (approximately) as of the date of the commencement of the trial. (Trial Tr. 81:19-22). This shows back wages in the amount of about $43,800.00. In addition, Defendants cannot guess as to how much the jury allotted for future loss of pay; since, Ms. Johnson's losses would continue until she either got a raise or new job. (Trial Tr. 81:21-22) Frontpay could have been one year's worth, which totals $10,000.00 or could have been 10 years' worth which is $100,000.00. As such, it is impossible to determine how much of the compensatory damage award was allocated to lost wages (both back and front pay) and how much was allocated to emotional distress. Nonetheless compensatory damages of $250,000 are appropriate in this case. [4]

Albeit, assuming arguendo that Defendants argument is correct, Plaintiff's compensatory damage award is still reasonable. In Phillips v. Bowen, 278 F.3d 103 (2d Cir. 2002), the Second Circuit declined to reverse the district court's determination that a jury award of $400,000.00

---

[4] In Port Auth. Police Asian Jade Society of New York and New Jersey v. Port Auth. of New York and New Jersey, 681 F.Supp.2d 456 (S.D.N.Y. 2010) - The Court refused to remit the $250,000 jury award for compensatory damages holding that, "competent evidence is not limited to medical evidence; the award should be considered in light of the 'circumstances of the violation itself'". Port Auth. 681 F.Supp.2d at 470.

was a fair assessment of damages. The jury found that the defendants, the plaintiff's supervisors, retaliated against the plaintiff after she exercised her First Amendment rights. Id. at 108. As in the case at bar, plaintiff in Phillips proffered corroborating evidence via the testimony of , her co-worker who testified that the plaintiff suffered ongoing harassment for three years resulting in emotional distress, physical illness and effects on her relationship and lifestyle. Id. at 110-112.

In Olsen v. County of Nassau, 615 F. Supp. 2d 35, 46-47 (E.D.N.Y. 2009) (internal citations and quotation marks omitted) the court is also guided by the following framework:

Emotional distress awards within the Second Circuit can generally be grouped into three categories of claims: garden-variety, significant and egregious. In garden variety emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury. Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration. Garden variety emotional distress claims generally merit $ 30,000 to $ 125,000 awards. Significant emotional distress claims differ from the garden variety claims in that they are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses. Finally, egregious emotional distress claims generally involve either outrageous or shocking discriminatory conduct or a significant impact on the physical health of the plaintiff. In significant or egregious cases, where there is typically evidence of debilitating and permanent alterations in lifestyle, larger damage awards may be warranted.

In addition to lost wages stemming from the unlawful termination, Plaintiff also has significant emotional injuries.  As a result of the discriminatory, retaliatory, and unlawful termination, Plaintiff testified that she suffered and will continue to suffer from depressed moods, anxiety, states of high, insomnia, loss of appetite, significant weight loss, periods of inability to care for her children and disruption of ability to concentrate.  (Trial Tr. 78:8-24). She testified to having undergone continued psychological treatment for the period over a year for her depression.  (Trial Tr. 79:4-25).  Plaintiff endured a hostile work environment at the hands of Defendants for over two years.  (Trial Tr. 74:12).

Given the severity of the unlawful actions and suffering, it is respectfully submitted that an amount in the neighborhood of $300,000.00 would be possible to obtain at the time of trial for Plaintiff's emotional distress only.  This is especially true given the new standard for

evaluating emotional distress in discrimination cases set forth in the Second Circuit Court of Appeals affirmed case of Brady v. Wal-Mart (see below).  Examples of sustained damages in similar employment cases:

| Damages | Factual Description | Case Name |
|---|---|---|
| $600,000 | Plaintiff had Generalized Anxiety Disorder from Defendants' discrimination that required treatment by a psychiatrist and medication- Judge reduced the jury's award to this amount. | Brady v. Wal-Mart Stores, Inc. 455 F. Supp. 2d 157 (2006) |
| $500,000 | Emotional distress damages for having been denied a position based on Plaintiff's political views, upheld by Magistrate Judge Arlene R. Lindsay | Thorsen v. County of Nassau, 2:03 CV 01022 (E.D.N.Y. 2009) |
| $471,706 | Depression due to Defendant's stereo-typing and harassing of Plaintiff, because of Plaintiff's perceived sexual orientation. | Albunio v. City of New York, 2009 WL 3644198, 2 (N.Y.A.D. 1 Dept.) (N.Y.A.D. 1 Dept.,2009 |
| $500,000 | Evidence showed that plaintiff had severe psychiatric difficulties. | Ramirez v. New York City Off-Track Betting Corp., 112 F.3d 38, 40-41 (2d Cir. 1997) |
| $450,000 | Plaintiff testified that she suffered anguish, guilt, depression, and anger at each of four intentional episodes of sex discrimination. | NYC Transit Auth. V. State Div. of Human Rights, 181 A.D.2d 891, 895, 581 N.Y.S.2d 426, 429 (2d Dep't 1992) |
| $400,000 | Court found that the compensation was reasonable. | Sogg v. American Airlines, Inc., 193 A.D.2d 153, 163, 603 N.Y.S.2d 21, 27-28 (1st Dep't 1993) |
| $300,000 | Court found that the constant, egregious, and blatant conduct warranted the relief awarded. | Tiffany & Co. v. Smith, 224 A.D.2d 332, 332-33, 638 N.Y.S.2d 454, 454 (1st Dep't 1996) |
| $200,000 to $500,000 | Court found that compensatory awards for emotional damages that fell within this range were appropriate. | Town of Hempstead v. State Div. of Human Rights, 233 A.D.2d 451, 452, 649 N.Y.S.2d 942, 942-43 (2d Dep't 1996) |
| $200,000 | Partner in a law firm made unwanted verbal and physical advances toward 24-year old plaintiff, and remarked, after her termination, that she need not worry because "you'll take care of me and I'll take care of you." | Sier v. Jacobs Persinger & Parker, 276 A.D.2d 401, 714 N.Y.S.2d 283 (1st Dep't 2000) |

### III.   DISMISSAL IS IMPROPER FOR DISCOVERY VIOLATIONS

As a preliminary matter, Defendants' application for dismissal of Plaintiff's action post-trial under Rule 37 is improper. Rule 37(c) of the Federal Rules of Civil Procedure authorizes the Court to sanction a party who has failed to comply with pretrial discovery orders. White v. City of New York, 2009 U.S. Dist. LEXIS 92079, 2-5, 2009 WL 3233121 (E.D.N.Y. Oct. 2, 2009). The function of this rule is during the course of discovery.

The remedy of a dismissal as a sanction, at the trial stage are covered by Federal Rule 41(b), which states in relevant part that actions can be involuntarily dismissed if the plaintiff fails to prosecute or comply with a court order. Fed. R. Civ. P. 41(b). Nevertheless, both Rule 37 and Rule 41 are analyzed under the same standard. See Doye v. Colvin, 378 Fed. Appx. 926, 927 (11th Cir. 2010) ("when a district court dismisses a plaintiff's complaint as a discovery sanction under Rules 37 and 41, we review for abuse of discretion and to ensure 'that the finds of the trial court are fully supported by the record.")

Dismissal with prejudice is a particularly harsh sanction, and is only appropriate in extreme situations. White, 2009 U.S. Dist. LEXIS 92079 at 3. Dismissal may only be imposed if the Court finds: 1) willfulness, bad faith, or fault on the part of the party refusing discovery, and the 2) the Court gave notice that the violation would result in the dismissal of the case with prejudice. Id. at 4.

None of those factors are present in this matter. First, Plaintiff's counsel's office was not in physical possession of the recording until after the commencement of trial. In preparing for Ms. Crawford's direct examination, counsel inquired as to the attachment to a text message that was marked as Plaintiff's Exhibit 45. Plaintiff then indicated that she believed that the office had the recording. However, looking through the file Plaintiff's counsel found that the office did not.

Unbeknownst to Plaintiff, this recording was not extracted from her phone at the time the recordings were downloaded by Plaintiff's vendor. This recording had not been saved to Plaintiff's phone; rather, it was sent and remained an attachment to a text message sent by Ms. Crawford in June 2012. As such, when the vendor lifted all the recordings on Plaintiff's phone, it simply extracted all the voice memos saved on her phone, inadvertently leaving out this

recording that was an attachment. As such, Plaintiff's was not aware that she had not fully complied with the production of the recordings, and as such could not have done so willfully or in bad faith.

At the time the recordings were produced to Defendants, Plaintiff's counsel produced every single recording that was responsive to Defendants requests that was in their possession at the time. Therefore to say that Plaintiff intentionally withheld "another audio recording" is mischaracterization of the facts. Contrary to Defendants assertions, Plaintiff counsel made no admission that she had obtained the recording since June 2012. Counsel was reading from Exhibit 45, annexed hereto as Exhibit D, which listed the date the text message was sent by Ms. Crawford to Ms. Johnson. Nothing was improperly withheld from Defendants. Plaintiff produced every recording that involved Plaintiff's claims in any way. In some instances, this caused certain recordings to be produced in duplicate.

Further at no point during the proceedings before the magistrate judge was Plaintiff ever informed at the possibility of dismissal of her action. See Holmes v. Trinity Health, 2013 U.S. App. Lexis 18328 (8th Cir. 2013) *citing* (Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1213 (8th Cir. 1981) ("We recognize that a Rule 37(b) sanction should not be imposed by the trial court unless a Rule 37(a) order is in effect. . . . [A] Rule 37(a) order insures that the party failing to comply with discovery is given adequate notice and an opportunity to contest the discovery sought prior to the imposition of sanctions.")  In addition, where the Court has not previously imposed sanctions, the drastic sanction of dismissal is premature. *See* White, 2009 U.S. Dist. Lexis 92079, at *4; s*ee also* Simmons v. Abruzzo, 49 F.3d 83, 88 (2d Cir. 1995) (court must impose less drastic sanctions, before resorting to dismissal).

Finally, the substantive discussion on the recording was not a fact at issue in this case. Defendant Carmona readily admitted to telling Ms. Crawford and Ms. Hall not to be used by Plaintiff. (Trial Tr. 71:11-13).   Plaintiff's only use of the recording was to impeach Ms. Crawford with the recording. However, the Court precluded Plaintiff from so doing. As such, Defendants suffered no prejudice.

**CONCLUSION**

For the foregoing reasons, it is respectfully requested that Defendants' Motion for Stay be denied in its entirety.

New York, New York
October 27, 2013

**PHILLIPS & ASSOCIATES
ATTORNEYS AT LAW, PLLC**


_____/s/_____
Marjorie Mesidor (MM1978)
45 Broadway, Suite 620
New York, NY 10006
(212) 248-7431
MMesidor@tpglaws.com