BRANDI JOHNSON,

                       Plaintiff,

   -against-

STRIVE EAST HARLEM EMPLOYMENT GROUP, LISA STEIN, individually, ROB CARMONA, Individually and PHIL WEINBERG, Individually,

                       Defendants.

**Case No.: 12-CIV-4460 (HB)(MHD)**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' POST-TRIAL MOTIONS**

**GORDON & REES, LLP**
ATTORNEYS FOR DEFENDANTS
90 BROAD STREET
NEW YORK, NEW YORK 10014
TEL: (212) 269-5500
FAX: (212) 269-5505

**TABLE OF CONTENTS**

Page No.

ARGUMENT ...................................................................................................................1

POINT I:   DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW.............1

    A.    Plaintiff's Substantive Claims Fail As A Matter of Law. ............................1

        1.    Plaintiff Concedes and/or Demonstrates The Absence of Her Discrimination Claims......................................................................1

        2.    Plaintiff Reinforced the Insufficiency of Her Gender and Race Harassment Claims......................................................................2

        3.    Plaintiff's Retaliation Claims Fail As A Matter of Law. .................4

    B.    Plaintiff Is Not Entitled to Punitive Damages As A Matter of Law. ..........5

POINT II:   IN THE ALTERNATIVE, THE COURT SHOULD GRANT A NEW TRIAL...............6

    A.    The Trial Court Was Not Fair And/Or Substantial Evidentiary Errors Occurred........6

        1.    Defendants Were Prevented From Fully Testifying .........................6

        2.    Plaintiff's Criminal Conviction ........................................................6

        3.    Testimony Regarding Plaintiff's Therapists .....................................6

        4.    Testimony By Maria Ortiz ................................................................7

        5.    Impeachment of Plaintiff Regarding "Put This Bitch In a Smash" Incident....7

        6.    Preclusion of Phil Weinberg's Investigation Notes .........................7

    B.    The Damages Awarded to Plaintiff Were Excessive and Should Be Remitted ...........8

POINT III:   DISMISSAL IS WARRANTED FOR INTENTIONAL DISCOVERY VIOLATIONS. ........9

## **TABLE OF AUTHORITIES**

Page No.

**Cases**

*Abel v. Town Sports Int'l, LLC*,
  2012 U.S. Dist. LEXIS 183444 (S.D.N.Y. Dec. 18, 2012) ................................................. 9

*Albunio v. City of New York*,
  67 A.D.3d 407 (1st Dep't 2009) ........................................................................................ 8

*Baron v. N.Y.C. Dep't of Educ.*,
  2009 U.S. Dist. LEXIS 57515 (E.D.N.Y. July 7, 2009) ................................................... 2

*Bickerstaff v. Vassar College*,
  196 F.3d 435 (2d Cir. 1999) ............................................................................................ 2

*Brady v Wal-Mart*,
  455 F. Supp. 2d 157 (S.D.N.Y. 2006) ............................................................................. 8

*Britt v. Merrill Lynch & Co.*,
  2011 U.S. Dist. LEXIS 96881 (S.D.N.Y. Aug. 26, 2011) ............................................... 2

*Bundschuh v. The Inn on the Lake Hudson Hotels, LLC*,
  914 F. Supp. 2d 395 (W.D.N.Y. 2012) ........................................................................... 5

*Camera v. Daise*,
  2001 U.S. Dist. LEXIS 26792 (S.D.N.Y. Mar. 9, 2001) ................................................. 10

*Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*,
  951 F.2d 1357 (2d Cir. 1991) .......................................................................................... 10

*Fowler v. New York Transit Auth.*,
  2001 U.S. Dist. LEXIS 762 (S.D.N.Y. Jan. 31, 2001) .................................................... 9

*Henry-Offor v. City Univ. of N.Y.*,
  2012 U.S. Dist. LEXIS 84817 (S.D.N.Y. June 14, 2012) ............................................ 4, 7

*Hoffman v. Palmer*,
  129 F.2d 976 (2d Cir. 1942) ............................................................................................ 7

*La Grande v. DeCrescente Distributing Co., Inc.*,
  370 Fed. Appx. 206, 2010 U.S. App. LEXIS 5925 (2d Cir. 2010) ................................ 4

*Lewis v. Velez*,
  149 F.R.D. 474 (S.D.N.Y. 1993) ..................................................................................... 7

*Macmillan v. Millenium Broadway Hotel*,
  873 F. Supp. 2d 546 (S.D.N.Y. 2012) ............................................................................. 9

Page No.

*Norville v. Staten Island University Hospital*,
   2003 U.S. Dist. LEXIS 28399 (E.D.N.Y. Oct. 20, 2003) ...................................................... 9

*NYCTA v. SDHR*,
   181 A.D.2d 891 (2d Dep't 1992) ........................................................................................ 8

*Peters-Turnbull v. Board of Educ. Of City of New York*,
   7 Fed. Appx. 107 (2d Cir. 2001) ......................................................................................... 9

*Phillips v. Bowen*,
   278 F.3d 103 (2d Cir. 2002) ................................................................................................ 8

*Ramirez v. New York City Off-Track Betting Corp.*,
   112 F.3d 38 (2d Cir. 1997) .................................................................................................. 8

*Sadki v. SUNY College*,
   310 F. Supp. 2d 506 (W.D.N.Y. 2004) ............................................................................... 2

*Sier v. Jacobs Persinger & Parker*,
   276 A.D.2d 401 (1st Dep't 2000) ........................................................................................ 8

*Sogg v. American Airlines, Inc.*,
   193 A.D.2d 153 (1st Dep't 1993) ........................................................................................ 8

*Sotomayor v. City of New York*,
   862 F. Supp. 2d 226 (E.D.N.Y. 2012) ................................................................................ 2

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
   663 F.3d 556 (2d Cir. 2011) ................................................................................................ 5

*Teri v. Oxford Mgmt. Servs.*,
   2009 U.S. Dist. LEXIS 107807 (E.D.N.Y. Nov. 18, 2009) ............................................... 10

*Thorsen v. County of Nassau*,
   722 F. Supp. 2d 277 (E.D.N.Y. 2010) ................................................................................ 8

*Tiffany & Co. v. Smith*,
   224 A.D.2d 332 (1st Dep't 1996) ........................................................................................ 8

*Town of Hempstead v. SDHR*,
   233 A.D.2d 451 (2d Dep't 1996) ........................................................................................ 8

*U.S. v. Dennis*,
   843 F.2d 652 (2d Cir. 1988) ................................................................................................ 6

iv

Page No.

**Rules**

Federal Rules of Civil Procedure Rule 37 .............................................................................. 9, 10

Federal Rules of Civil Procedure Rule 41 .............................................................................. 9

Federal Rules of Evidence Section 803 .................................................................................. 7

## ARGUMENT

## POINT I:  DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW.

A.     Plaintiff's Substantive Claims Fail As A Matter of Law.

   1.     Plaintiff Concedes and/or Demonstrates The Absence of Her Discrimination Claims

Plaintiff concedes the absence of a gender-based termination case.  In reciting her *prima facie* proof, Plaintiff identifies only that she is "Black," not her gender, for the first element.  Pl. Opp. 13.[1]

With respect to race discrimination, for the fourth element of the *prima facie* case Plaintiff simply says the circumstances of her termination "were most suspicious and definitely give rise to an inference."  Pl. Opp. 13.  But she does not dispute (a) the absence of discriminatory remarks, at any time, by Weinberg, the decisionmaker, (b) her position was funded by the Grant, (c) the math performed by Defendants to demonstrate that, or (d) the Grant funding was set to, and did, expire June 30, 2012.

Plaintiff claims pretext with three assertions, each of which is legally insufficient (and at times factually inaccurate).  Pl. Opp. 13-14.  First, Plaintiff sees pretext in the fact that other positions partially funded by the Grant did not suffer salary reductions.  But Plaintiff fails to demonstrate that she, who was fully funded, is similarly situated to those only partially funded.[2]

Second, Plaintiff asserts a "substantially similar" position was posted by STRIVE "about a month of [sic] Plaintiff's termination."  However, she fails to substantiate that "substantially similar" assertion (because she cannot).[3]  In addition, the "new" position was posted on August 14, 2012, two months after Plaintiff's termination date.  TT 355:22-23, 370:4.  It is unclear how Plaintiff expects to have been retained for a position that did not exist on her termination date.

Finally, Plaintiff grossly misrepresents the record (TT 416:16-19) by claiming Carmona testified there was "'always'" an ASC position, "irrespective of the" Grant.  To the contrary, all he said was the position existed before Plaintiff was hired – which is absolutely true; it was first held by Proklemba.[4]

Plaintiff then pushes a cat's paw theory of liability but fails to address the lack of any

---

[1]     Because Plaintiff did not number the pages of her brief, Defendants are utilizing the ECF pagination.

[2]     Indeed, the record cite used by Plaintiff to support this argument asks about the President of STRIVE.  TT 332:23-333:12.  Surely Plaintiff cannot contend she was similarly situated to the President.  Nor can she say there was no continuing purpose or need for those other positions once the Grant ended, unlike her position.  TT 311:5-17.

[3]     The position was Program Director of "STRIVE for the Future," a separate and new initiative designed to work with juvenile offenders, requiring prior experience with juvenile offenders and technical knowledge of complicated laws, rules and regulations pertaining to minors and the criminal justice system to permit the individual, among other things, to design the program, which Plaintiff's position did not involve or require.  TT 370:4--371:8; Ex. 1/T.Ex. YY.  (This exhibit is attached to the Reply Declaration of Diane Krebs, dated October 31, 2013.)

[4]     In this regard, Plaintiff's contention that Defendants previously argued Plaintiff was the first person in the ASC position (Pl Opp. 14) is incomprehensible and untrue – and Plaintiff provides no record cite.  The only testimony on this subject was from Carmona, cited above, and Stein, who testified Plaintiff was hired into the ASC position, there was no ASC position prior to the Grant, and Proklemba first held the position for several weeks (TT 267:10-22, 363:8-18).

instruction, and thus any basis, for the jury to have used this form of liability. Moreover, Plaintiff has failed to identify any evidence linking Carmona to the decision to terminate her. Plaintiff points to influence Carmona allegedly wielded with respect to *other* aspects of her employment. *See* Pl. Opp. 14-15 and record cites therein.[5] But she fails to cite one single sliver of evidence revealing any input, however small, Carmona had in the decision-making process that resulted in her termination. To the contrary, Carmona was entirely removed from that process. TT 404:13-16, 506:21-508:8.[6]

As such, Plaintiff's cat's paw argument rests on pure speculation that Carmona influenced the termination decision.[7] However, the alleged wrongdoer must have influenced the decision at issue. "The fact that Defendant [] was well-known, well-respected, and well-connected or that he had access to [relevant] information about Plaintiff does not demonstrate that he played a role tantamount to input in the determination." *Britt v. Merrill Lynch & Co.*, 08 Civ. 5356 (GBD), 2011 U.S. Dist. LEXIS 96881, at *31-32 (S.D.N.Y. Aug. 26, 2011).[8] Plaintiff implicitly concedes the absence of such evidence.[9]

### 2. Plaintiff Reinforced the Insufficiency of Her Gender and Race Harassment Claims.

Plaintiff persists in attempting to mislead this Court as to the elements of a *prima facie* case. She cites three elements (Pl. Opp. 16), ignoring the most critical one of all: "The relevant consideration is whether … plaintiff 'has been treated less well than other employees' *because of* her [protected status]." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012) (citation omitted; emphasis added), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (per curiam). Despite this, she seems to acknowledge the need for the "because of" factor, as she continuously claims there is testimony of negative conduct "on the basis of" race or gender – yet there are either no citations to the record, or the

---

[5] Notably, the quantitative and qualitative majority of influence attributed to Carmona (her hiring, speaking with her about her attire, and lobbying in favor of retaining her in late 2011/early 2012) was positive for Plaintiff.

[6] These record cites were noted in the body of Defendants' moving brief at 11, right before the reference to n.18. Plaintiff's claim that Defendants provided no record support for this assertion (Pl. Opp. 16) is thus disingenuous.

[7] For example, Plaintiff claims she testified to her belief that Carmona influenced her termination. Pl. Opp. 14. Not only does the record portion cited by Plaintiff in support (TT 78:8-14) not contain this belief anywhere in it, but Plaintiff has no personal knowledge to support this belief, which is why it is only a belief.

[8] Indeed, even the cases cited by Plaintiff support this; each one turned on whether the allegedly biased individual played some role in the decision at issue. *See, e.g.*, *Baron v. N.Y.C. Dep't of Educ.*, No. 06-cv-2816 (FB) (MDG), 2009 U.S. Dist. LEXIS 57515, at *18 (E.D.N.Y. July 7, 2009) (cat's paw theory viable because evaluations written by alleged biased individual considered by decision-makers in decision at issue); *Bickerstaff v. Vassar College*, 196 F.3d 435, 451 (2d Cir. 1999) (no cat's paw because no evidence that alleged biased individual "played a meaningful role in the review process" for decision at issue); *Sadki v. SUNY College*, 310 F. Supp. 2d 506, 514-15 (W.D.N.Y. 2004) (cat's paw theory viable where key player in decision-making process had discussions with alleged biased individual, who told key player plaintiff was not qualified for position and thus could have influenced hiring process).

[9] Plaintiff, without any legal support, categorizes the same actor theory as an "affirmative defense." Pl. Opp. n.2-3. But, as can be seen in the cases cited by Defendants, it is not an "affirmative defense"; it is a rationale based on logic that the courts apply when considering whether sufficient evidence of discrimination exists. Plaintiff does not deny its application to Carmona, to the extent he is somehow deemed to have influenced the termination decision (though as explained more fully above, there is no evidence to support that contention).

record cites are bereft of any testimony as to causation between race/gender and the conduct.[10]

On sexual harassment, Plaintiff cannot support her thesis that the majority of incidents were gender based. She merely argues statements are not neutral when " not made to male employees who were not former participants." Pl. Opp. 17. However, "former participants" is not a protected class and thus such male employees cannot be excluded. In addition, the record cites used by Plaintiff to support her false statement, like the statements itemized in footnote 10 *supra*, say nothing about whether these sorts of statements were made to male employees. Finally, Defendants provided direct evidence that Carmona did speak with members of both genders (not to mention individuals of all races) this way. TT 50:19, 59:13-20, 236:13-237:17, 387:7-388:3, 488:14-23. Plaintiff has not even attempted to rebut or explain away this uncontested testimony, other than pretending contrary record cites exist.

Plaintiff relies greatly on Ortiz's testimony to create the appearance of gender-based harassment. Pl. Opp. 16-18. However, Ortiz did not witness how Carmona treated Plaintiff (TT 176:9-16) and thus cannot corroborate Plaintiff's alleged environment. Plaintiff repeatedly cites Ortiz's testimony about Carmona's alleged treatment of one random male and female participant, but those are not employees, the relevant comparison group. In addition, Ortiz's testimony that Carmona assigned her a supervisor after she acted insubordinately has no comparator information, which makes it indicative of nothing. In any event, Ortiz admitted she was not aware of every time Carmona addressed a participant issue and/or an employee issue. TT 188:9-24, 190:11-20, 191:20-23.[11]

Plaintiff also points to Carmona referring to himself as a male chauvinist. Pl. Opp. 18. But rather than demonstrate negativity toward women, Carmona's testimony (supported by Ortiz) reflects that his alleged "chauvinism" is a product of his culture, which he logically knows is unfounded and has overcome within his own mindset, recognizing women can be just as strong as men. TT 192:24-193:19, 388:4-20, 418:3-419:10. In addition, Plaintiff did not proffer any evidence distinguishing Carmona's treatment of male vs. female employees. And Plaintiff has not even addressed, let alone rebutted, the case law in Defendants' moving brief at 12-13 that the type of conduct asserted by Plaintiff is legally insufficient, because it is unrelated to Plaintiff's membership in a protected class and/or is simply not

---

[10]   Space constraints prevent Defendants from itemizing all Plaintiff's record miscites. A few examples are:
- "Plaintiff Johnson was subjected to screaming, yelling and cursing by Defendant Carmona [record cite] ***because of her race and gender***" – no record cite for end of the sentence. Pl. Opp. 10 (emphasis added).
- "Plaintiff testified to being berated and spoken down to ***on the basis of her gender*** as the 'normal' fashion that Defendant Carmona spoke to her. ([TT] 59:13-16)" Pl. Opp. 16 (emphasis added). The cite just indicates that saying, "Yo, in my office" was how Plaintiff claims Carmona spoke to her typically. Plaintiff says nothing about it being because of her gender. Moreover, the record cite itself contradicts Plaintiff's assertion, because in that instance Carmona was speaking to a male.

[11]   Plaintiff also inappropriately cites testimony by Ortiz that this Court struck from the record, further revealing how Plaintiff is grasping at anything to try to scrape together a viable claim. Pl. Opp. 18 (citing TT 177:7, 20).

egregious enough to constitute more than petty slights or trivial inconveniences.

With respect to race harassment, Plaintiff's response demonstrates her case is based on her tape-recorded conversation with Carmona in which he used the word "nigger."[12]  Despite the clear context of Carmona's use of the word "nigger" and Plaintiff's response, Plaintiff claims her sentence "I am really offended by that.  I don't think that I do" (Ex. F/T.Ex. 106; Ex. G/T.Ex. 107) is "ambiguous on its face" and could just as easily refer to her offense at the word itself.  Pl. Opp. 19.  However, there is no inherent ambiguity; if Plaintiff were offended by the use of the word "nigger," as opposed to the quality or type of behavior attributed to her,[13] "I don't think I do" would not logically fit as a response.

Notably, Plaintiff does not even acknowledge the abundant case law cited by Defendants in their moving brief at 14 n.21 that this single conversation as a matter of law cannot be deemed anything more than a petty slight and trivial inconvenience.  Instead, Plaintiff only cites *La Grande v. DeCrescente Distributing Co., Inc.*, 370 Fed. Appx. 206, 210 (2d Cir. 2010).  Pl. Opp. 20.  However, *La Grande* merely held that, on a motion to dismiss (analyzed under a radically different standard), allegations of a racially hostile work environment that included being called a "nigger" were sufficient to plausibly allege a claim and survive dismissal.  *La Grande*, 370 Fed. Appx. at 210-11.  Everything about that sole conversation between Plaintiff and Carmona – including context[14] and Plaintiff's own use of the word "nigger" – demonstrates that it did not rise to a level above a petty slight and trivial inconvenience.

### 3. Plaintiff's Retaliation Claims Fail As A Matter of Law.

Plaintiff's meager attempts to sustain a retaliation claim fall far short.[15]  Regarding the termination, Plaintiff fails to rebut the detailed demonstration from Defendants' moving papers. Moving on to the few other stray incidents, Plaintiff does not dispute Defendants' argument about the "wrap it up" incident.  Instead, she attempts to redirect the Court to the "don't be used" conversation.  But Plaintiff again misstates the record, claiming Carmona told Crawford and Hall "to 'not allow [themselves] to be used' *by Ms. Johnson*."  Pl. Opp. 23 (citing TT 71:11-13) (emphasis added).

---

[12] Plaintiff also briefly refers to Carmona using the word in one other conversation, but Plaintiff was not there and did not hear it, nor did she testify to ever even being aware of it while at STRIVE.  Pl. Opp. 19; *see also* TT 67:5-9, 127:5-11.  It is thus irrelevant, because it in no way affected her work environment.  *See, e.g.*, *Henry-Offor v. City Univ. of N.Y.*, No. 11 Civ. 4695 (NRB), 2012 U.S. Dist. LEXIS 84817, at *12 (S.D.N.Y. June 14, 2012) ("an act of which the plaintiff was entirely unaware logically cannot have contributed to the plaintiff's experience of a hostile environment").

[13] The distinction is significant.  Plaintiff's claim of harassment is based on the use of that specific word.  If Plaintiff was offended by the message about her behavior, which could have been expressed in a variety of ways, she would have been offended regardless of the word used.  That is, of course, what occurred.

[14] With respect to context, Plaintiff attempts to slant the Court's perception by referring to the conversation as a "tirade."  Pl. Opp. 20.  But it was a matter of fact discussion, initiated by Plaintiff and continued at her insistence even after Carmona said he did not want to discuss it.  Carmona used an even tone, and there was a free give-and-take.

[15] The "fact" that Plaintiff was terminated on the same day STRIVE was served with her lawsuit (Pl. Opp. 22) does nothing for her retaliation claim.  Plaintiff ignores the only testimony about service of that lawsuit, which reveals indisputably that it, and thus notice to Defendants, did not occur until *after* Plaintiff's termination.  TT 406:17-20.

Carmona never mentioned Plaintiff or her complaint during that conversation, and Crawford did not understand that Carmona's comment referred to Plaintiff. TT 200:4-10, 200:23-201:1, 203:3-6, 204:5-11, 402:4-21. Thus, the statement was unconnected to Plaintiff, either directly or by understanding.

Regarding the Cooks incident, Plaintiff ignores the fact that, per Cooks' testimony, his visits to Plaintiff were for assistance (TT 213:13-214:2, 214:20-22) – which Plaintiff herself has admitted she was not supposed to be providing. TT 57:22-24, 303:22-304:4, 388:24-90:8. Plaintiff has not and cannot contest the legitimacy of attempting to prevent her from engaging in this improper conduct (and clearly prior direct attempts to get Plaintiff to cease this conduct on her own had not worked).

With respect to the "door slamming" incident, Plaintiff fails in her attempt to distinguish Crawford's experience by characterizing it as having heard "a door slam from across the room." Pl. Opp. 23. Yet – surprise, surprise – Plaintiff provides no record cite for this characterization – because it does not exist. *See* TT 71:1-3 (" … she is uncomfortable with Rob and Rob slams the door").

Finally, with respect to all the pre-termination incidents, Plaintiff fails to address the argument that none of them rise to the level of complaint-deterring conduct. The conduct Plaintiff alleges are exactly the minimal slights or inconveniences courts have found unlikely to deter reasonable employees from complaining. *See, e.g.*, *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568-72 (2d Cir. 2011) (Title VII) (nine incidents, including verbal unfulfilled threats, stare with perceived negative comment, and non-disciplinary counseling); *Bundschuh v. The Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 406-07 (W.D.N.Y. 2012) (federal and state law) (allegations of belittling and berating) (citing cases). Moreover, although the standard is objective, "it is relevant that [Plaintiff] was not deterred from complaining – [she] complained numerous times." *Tepperwien*, 663 F.3d at 572.

**B.    Plaintiff Is Not Entitled to Punitive Damages As A Matter of Law.**

Plaintiff ignores the applicable standard, substituting knowledge of a violation of *company policy* for the required knowledge that one is acting in violation of the *law*. See Pl. Opp. 23. Plaintiff also points to no evidence that Defendants acted in conscious disregard of the law or with evil intent.[16] It is clear from listening to the recording that Carmona's intent was to coach Plaintiff. Carmona testified (and no one testified to the contrary) to the multiple cultural meanings and uses of the word, TT 404:23-405:25, and furthermore, that when he used it in this conversation, he said it "out of love" because of the overall message he was trying to provide. TT 429:12-430:7. Indeed, Carmona explicitly told Plaintiff he was not using the word "nigger" in a derogatory fashion.[17]

---

[16]    Plaintiff's reference to Carmona's alleged "tendency toward 'male chauvinism'" is confusing. Given that one measures a defendant's subjective belief to determine whether punitive damages have been established, Carmona's conscious goal to suppress any feelings of chauvinism (*see* p. 3, *supra*) shows an intent not to discriminate.

[17]    Though she claims Carmona only said this to "cover his 'tracks'" (Pl. Opp. 24), Carmona would have had no

## POINT II:  IN THE ALTERNATIVE, THE COURT SHOULD GRANT A NEW TRIAL

A.     **The Trial Court Was Not Fair And/Or Substantial Evidentiary Errors Occurred.**[18]

   1.     **Defendants Were Prevented From Fully Testifying**

Plaintiff does not deny the Court curtailed Weinberg's and Stein's testimony but argues Defendants did not preserve this ground for appeal[19] because they did not make an offer of proof at the time of trial, citing Fed. R. Evid. 103.  However, the Court made very clear his rules regarding objections.  TT 13:3-13.  Defendants followed those rules and should not be penalized for doing so.[20] *See U.S. v. Dennis*, 843 F.2d 652, 656 (2d Cir. 1988) (where failure to make offer of proof is "due in large measure to the district court's refusal to permit [witnesses] to testify," issue preserved for appeal).

Plaintiff's only other argument is that the excluded testimony supposedly dealt only with Stein and Weinberg's conduct.  However, it is impossible to say this, because Defendants were not permitted to address those issues at all, and they demonstrated they had information about Defendants as well.

   2.     **Plaintiff's Criminal Conviction**

Plaintiff argues that her criminal conviction would not help determine whether a hostile environment existed at STRIVE, ignoring its other uses, *e.g.*: to put Carmona's communications with Plaintiff into context; credibility; and to correct the misleading statement in her counsel's closing.  Plaintiff claims the "tough love" approach is only relevant to individuals who were incarcerated, as they allegedly need to be acclimated away from a jail culture.  Pl. Opp. 27.  But yet again Plaintiff provides no citation in support.  Moreover, the testimony was participants come from different at-risk backgrounds, not just jail (*e.g.*, poor communities), and they need to learn the proper attitude and approach for work.  TT 382:2-16.  Those with convictions can qualify – and indeed, this would hold particularly true for Plaintiff, whose criminal conviction related to employment.  TT 616:11-23.

   3.     **Testimony Regarding Plaintiff's Therapists**

Most notable about Plaintiff's argument on this point is that she now apparently abandons her claim that she served the phantom "Initial Disclosures" document with the doctors' names in September 2012 – she now admits Defendants did not learn the names of Plaintiff's doctors until May 2013.  Pl. Opp. 28.  Plaintiff also does not contest the prejudice to Defendants.  Rather, Plaintiff claims, incomprehensibly and without record support, that Plaintiff identified the therapists "at the initial

---

need, as he did not know Plaintiff was taping the conversation; Plaintiff admitted she did so secretly.  TT 144:13-145:2.  In any event, a review of the recording – not only the words but the tone, the patter, and Plaintiff's responses – demonstrates Carmona was not engaged in any track-covering.

[18]     Regarding the clear weight of the evidence, Plaintiff's opposition papers raised no issues requiring a response.

[19]     It should be noted that this motion is not an "appeal," and thus Plaintiff's argument is inapposite.

[20]     Defendants attempts to address this issue were rejected.  TT 300:6-10, 301:15-302:5, 372:1-374:3.

discovery hearing." Pl. Opp. 27. Plaintiff also claims there was prior notice in discovery responses; however, as explained more fully previously (Krebs Decl. Exs. N and O), given Plaintiff's reference to her initial disclosures for a list of relevant witnesses, which did not include the therapists, Defendants were misled into thinking there were no such witnesses.[21] And there was no opportunity for Defendants to explore once learning of the therapists, because discovery had already closed by that time.

### 4. Testimony By Maria Ortiz

Plaintiff's arguments regarding the "relevancy" of Ortiz's testimony is unconvincing. As explained more fully elsewhere, this testimony did not relate to Carmona's treatment of employees. Moreover, Plaintiff does not contest that these incidents were not a part of her own work environment. *See Henry-Offor*, *supra*, 2012 U.S. Dist. LEXIS 84817, at *12.

### 5. Impeachment of Plaintiff Regarding "Put This Bitch In a Smash" Incident

Clearly afraid of the significance of this error. Plaintiff cites the wrong standard for evaluating it, claiming Defendants must show admission of this evidence would have "dispositively decided" one of her claims (notably, with no case support for this inflated burden). Pl. Opp. 28. Plaintiff says this incident sought to "paint the picture of the environment" – but without this document, Plaintiff painted a false picture. Moreover, Plaintiff cited so few examples of alleged retaliatory conduct that each one was significant enough to have swayed the jury's decision. Indeed, Plaintiff cites this "smash" incident (and particularly the word "bitch") in other parts of her brief (Pl. Opp. 18, 23), showing its importance to her.

### 6. Preclusion of Phil Weinberg's Investigation Notes

Plaintiff's sole legal support for the exclusion of Weinberg's notes (sought to be admitted as (i) non-hearsay, admissible to show the investigation was conducted and Defendants' state of mind, and/or (ii) business records under Fed. R. Evid. 803(6) (*see* TT 478:2-479:24)), is *Lewis v. Velez*, 149 F.R.D. 474 (S.D.N.Y. 1993). However, *Lewis*, which involved claims for assault and excessive force against prison guards, is distinguishable. The court excluded the investigative reports prepared by the involved guards as untrustworthy, because they knew at the time they wrote the reports they were likely to be individually charged. 149 F.R.D. at 488.[22] However, here, at the time of conducting the investigation, Weinberg *was not the subject of Plaintiff's claims*. That is the very reason he led the investigation and not others. TT 474:6-475:3. Thus, the concern expressed in *Lewis* did not exist for this investigation. Indeed, Plaintiff has not even addressed the more recent cases cited by Defendants in their moving brief

---

[21] The same is true with respect to the general allegation of medical treatment in the Amended Complaint. Plaintiff's more specific initial disclosures, with no therapist names, lulled Defendants into a false sense of security. This would hardly be the first time that a complaint contained statements that were later not substantiated.

[22] In so ruling, the court relied on *Hoffman v. Palmer*, 129 F.2d 976 (2d Cir. 1942), which involved a document written under the same circumstances, albeit in a personal injury context.

admitting investigation notes under identical circumstances as presented here – a harassment complaint.

Nor was the exclusion harmless. These notes were relevant to Carmona and STRIVE's liability, especially given Plaintiff's claim that Carmona wielded influence over Weinberg.

**B.      The Damages Awarded to Plaintiff Were Excessive and Should Be Remitted**

Plaintiff attempts to hold on to her excessive award by citing a string of cases with high damages awards, as if the mere incantation of large dollar figures will rub off on her case. However, Plaintiff provides almost no facts for any of those cases to even attempt to support a comparison. A closer review only serves to emphasize the differences between those cases and this one.[23]

Perhaps in recognition of the limited evidence she adduced, Plaintiff manufactures symptoms about which she never testified: "anxiety, states of high [sic], insomnia, loss of appetite, significant weight loss, … and disruption of ability to concentrate." Pl. Opp. 30 (citing TT 78:8-24). But these symptoms appear *nowhere* in her testimony. She also claims she suffered from "depressed moods" – a medical diagnosis she is not competent to make (and in any event, Plaintiff never said this; rather, she said she was "very bothered," at times had to "muster up the energy" to get herself together, and had her self-esteem shaken).[24] Indeed, the only accurate symptom reported in Plaintiff's brief is that Plaintiff

---

[23]    *See Phillips v. Bowen*, 278 F.3d 103 (2d Cir. 2002) (ongoing harassment for five years; detailed testimony by plaintiff and her boyfriend about her emotional distress, physical illness, and the effects of defendants' conduct on her lifestyle and relationships; co-worker testimony about observed deterioration in plaintiff); *Brady v. Wal-Mart*, 455 F. Supp. 2d 157 (S.D.N.Y. 2006) (corroboration from plaintiff's family and treating psychiatrist about his mental pain and suffering; plaintiff clinically diagnosed with "generalized anxiety disorder" by psychiatrist and was prescribed anti-anxiety drug; previous medical condition of cerebral palsy and previous psychiatric treatment – court found that discriminatory conduct "compounded a lifetime of trauma arising from a disabling condition"; psychiatrist testified plaintiff was not completely restored to his emotional state prior to the events at issue); *Thorsen v. County of Nassau*, 722 F. Supp. 2d 277 (E.D.N.Y. 2010) (lengthy testimony from plaintiff and treating psychologist regarding his depression, anxiety, physical symptoms, detachment from family and colleagues, "major stress attack" that required hospitalization, and two different medications prescribed to treat plaintiff's symptoms); *Albunio v. City of New York*, 67 A.D.3d 407 (1st Dep't 2009) (treating psychiatrist testified to causation between discriminatory conduct and emotional injuries, including anxiety/panic attacks, suicidal ideation and reactive depression; multiple medications taken to combat depression and anxiety); *Ramirez v. New York City Off-Track Betting Corp.*, 112 F.3d 38 (2d Cir. 1997) (mass of unrebutted trial testimony, including from treating psychiatrist, showing plaintiff was functional before his termination and non-functional after, rendered essentially unemployable); *NYCTA v. SDHR*, 181 A.D.2d 891 (2d Dep't 1992) (evidence of anguish, guilt, depression, and anger; mental distress persisted even to the time of testimony more than six years after the last discriminatory act occurred; "most shocking instance of abuse of an employee by an employer" ever seen by the ALJ); *Sogg v. American Airlines, Inc.*, 193 A.D.2d 153 (1st Dep't 1993) (testimony by plaintiff and her psychologist of serious emotional injuries, including diagnosis of post-traumatic stress disorder, continuing tearfulness, sleeplessness, lack of self-confidence, nervousness, and other symptoms); *Town of Hempstead v. SDHR*, 233 A.D.2d 451 (2d Dep't 1996) (facts varied for different complainants, but evidence included anger at others, fear of going out alone, persistent crying about the harassment, withdrawal, weight loss, difficulty sleeping, tension headaches, breakup with fiancé, resurgence of feelings associated with having been sexually abused as a child, therapy, and taking anti-depressants); *Tiffany & Co. v. Smith*, 224 A.D.2d 332 (1st Dep't 1996) (this decisions does not recite any of the facts forming the basis of its decision on emotional distress damages, which begs the question of how Plaintiff could assert this as a comparative case); *Sier v. Jacobs Persinger & Parker*, 276 A.D.2d 401 (1st Dep't 2000) (same).

[24]    Similarly, Plaintiff's alleged testimony that she underwent "continued psychological treatment for the period over a year for her depression" (Pl. Opp. 30 (citing TT 79:4-25)) involves a medical diagnosis Plaintiff is not competent to make (nor did she testify to seeking out assistance for "depression").

8

testified she "wasn't always an effective parent … because of this." TT 78:19-20. Moreover, Plaintiff never testified that she would "continue to suffer" from any of her symptoms;[25] and even if Plaintiff had so testified, the testimony would not have been competent, because it requires the opinion of an expert.

Thus, Plaintiff's evidence is limited. There was no evidence of any future expected symptoms or effects, permanent lifestyle changes, ongoing physical manifestations of distress, or medication. The case law supports the conclusion that this is garden variety damages warranting remittitur:

| Case | Evidence of Emotional Distress | Award |
|---|---|---|
| *Norville v. Staten Island University Hospital*, No. CV 96-5222 (RJD), 2003 U.S. Dist. LEXIS 28399 (E.D.N.Y. Oct. 20, 2003), *aff'd*, 112 Fed. Appx. 92 (2d Cir. 2004) | Testimony by plaintiff and her sister that plaintiff had difficulty sleeping, experienced panic attacks, spent most days crying or watching television, had a nervous stomach, and became socially reclusive and aggressive to her friends; testimony of Ph.D., whom the plaintiff visited on one occasion, that plaintiff had clinical depression, post-traumatic stress disorder, and, while improved, would still require 1-3 more years of psychotherapy to fully heal | $30,000 |
| *Abel v. Town Sports Int'l, LLC*, 09 Civ. 10388 (DF), 2012 U.S. Dist. LEXIS 183444 (S.D.N.Y. Dec. 18, 2012) | Testimony of distress sparse and vague; plaintiff "hurt," "ashamed" and "very low"; "little detail of the duration, severity or consequences"; treating psychiatrist testified to distress, and expert testified to problems for plaintiff stemming from harassment; even with medical witnesses still garden variety | $100,000 |
| *Macmillan v. Millenium Broadway Hotel*, 873 F. Supp. 2d 546 (S.D.N.Y. 2012) | Testimony from plaintiff that experience was "horrible"; daughter's testimony that plaintiff was now "always sad," "wasn't his same self," and underwent change in temperament; plaintiff remained at work throughout period of harassment | $30,000 |
| *Fowler v. New York Transit Auth.*, No. 96 Civ. 6796 (JGK), 2001 U.S. Dist. LEXIS 762 (S.D.N.Y. Jan. 31, 2001) | Plaintiff testified she felt "angry," "hurt" and "disrespected"; saw her treating physician several times for headaches, tension, stress, anxiety, vomiting; saw psychologist and social worker several times for headaches, difficulty sleeping, poor appetite, coping skills; were other factors that could have contributed to these symptoms | $25,000 |

**POINT III: DISMISSAL IS WARRANTED FOR INTENTIONAL DISCOVERY VIOLATIONS.**

Plaintiff cites Rule 41(b) instead of Rule 37(b). Both can apply, and the outcome is the same regardless; "there is little distinction whether the dismissal is technically made under Rule 41 or Rule 37." *Peters-Turnbull v. Board of Educ. Of City of New York*, 7 Fed. Appx. 107, 110 (2d Cir. 2001).

Plaintiff does not dispute any of the following: (a) the Crawford recording fell within the scope of Defendants' discovery demands; (b) the Court saw a culpable state of mind in Plaintiff's prior violations; (c) Plaintiff failed to produce the original copy of Plaintiff's alleged job description, although it was within the scope of discovery; and (d) Plaintiff had the Crawford recording in June 2012.

Plaintiff's arguments against dismissal are unavailing. First, she alleges a chain of errors constituting law office failure, which she describes in unsworn fashion in her brief (not in a declaration

---

[25] Indeed, Plaintiff had not seen her therapist "in about two or three months." TT 79:24.

9

or affidavit). Pl. Opp. 32-33.[26] However, even if her counsel was unaware of the recording (though that is unclear), Plaintiff was aware; it was her obligation to discuss the relevant documents and review production responses to ensure completeness, and so this issue should have been detected well before trial. In any event, once they allegedly realized it was not produced, they were obligated to notify Defendants and the Court immediately and produce the recording. Yet Plaintiff clearly did not do so.

Second, Plaintiff argues she was never specifically warned of the possibility of dismissal for her failure to comply with her discovery obligations. But it is undisputed that Magistrate Judge Dolinger ordered Plaintiff – on two separate occasions – to turn over all audio recordings.[27] Moreover, a plaintiff need not be specifically warned of the possibility of dismissal for non-compliance. *See, e.g., Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991) ("Although formal warnings often precede the imposition of serious sanctions, [the Second Circuit] has never considered warnings an absolute condition precedent," and "[p]arties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their peril"); *Teri v. Oxford Mgmt. Servs.*, 05 Civ. 2777 (DRH)(WDW), 2009 U.S. Dist. LEXIS 107807, at *10 (E.D.N.Y. Nov. 18, 2009) ("formal warnings are not necessary before sanctions pursuant to Rule 37(b)(2) are imposed").

Finally, it is insolent and galling for Plaintiff to attempt to excuse yet another gross discovery violation by blithely asserting that Defendants suffered no prejudice because Plaintiff only wanted to use it to impeach Crawford. Seeing as Defendants have not, to this day, heard the recording, it is impossible to say how *Defendants* could have used the recording, especially since Plaintiff attempted to impeach Carmona's credibility with respect to that conversation (445:20-447:6, 454:8-456:21), and Plaintiff even in her opposition attempts to expand the content of that conversation beyond what is contained in the record. *See* pp. 4-5, *supra*. The pattern is clear, and dismissal is appropriate in these circumstances.

Dated:  New York, New York
        October 31, 2013

> Respectfully submitted,
>
> GORDON & REES, LLP
>
> By:  */s/ Diane Krebs*
>      Diane Krebs
>      Kuuku Minnah-Donkoh
>      *Attorneys for Defendants*

---

[26] It is truly amazing how many law office failures or unusual problems Plaintiff and her counsel seem to have suffered during this litigation – failure to produce all Plaintiff's recordings; the phantom Initial Disclosures document; and now failure to produce the Crawford recording. The coincidence is quite astounding – too astounding, in fact.

[27] *See Camera v. Daise*, 98 Civ. 808 (RMB)(RLE), 2001 U.S. Dist. LEXIS 26792, at *13-14 (S.D.N.Y. Mar. 9, 2001) ("The court order need not be issued pursuant to Rule 37(a), [ ] so long as 'there is a clearly articulated order of the court requiring specified discovery'") (citation omitted).